## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **MICHAEL KLEINMAN,** | § | |
| **MMK HOLDINGS, LP, and** | § | |
| **AUSPRO ENTERPRISES, LP,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | **CIVIL ACTION NO. _____** 1:22-cv-00527 |
| **v.** | § | |
| | § | |
| **CITY OF CEDAR PARK,** | § | **(JURY DEMANDED)** |
| | § | |
| *Defendant.* | § | |

## COMPLAINT AND REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF

TO THE HONORABLE COURT:

 Plaintiffs Michael Kleinman, MMK Holdings, LP, and AusPro Enterprises, LP, file this action complaining of Defendant City of Cedar Park.

## INTRODUCTION

 1. Plaintiffs own and operate twenty-one Planet K Gifts retail stores throughout Central Texas, including Austin, Cedar Park, San Marcos, New Braunfels, San Antonio, and Bryan. The first store opened in 1990. The Planet K Gifts stores sell food, non-alcoholic beverages, clothing, room décor, cleaning supplies, toiletries, toys, games, and other miscellaneous items, as well as cigars, pipe tobacco, snuff tobacco, cigarettes, loose tobacco for roll-your-own cigarettes, rolling papers, hand pipes, water pipes, vaping supplies, CBD hemp flower, pre-rolled CBD hemp cigarettes, CBD edibles, and other CBD items.

 2. In November 2021, the newest Planet K Gifts store was opened in the City of Cedar Park. A week or two later, the City designated the store a "head shop" and demanded that it cease operations. The City's zoning ordinance prohibits operation of a "head shop" in any of its zoning

districts. The City defines "head shop" as a business that offers for sale any item that is "commonly used, intended to be used, or commonly known to be used" to ingest or inhale an illegal substance, even if the item can also be used for a another purpose. Operation of a head shop in a zoning district is a Class C Misdemeanor punishable by fine up to $2,000.00.

3.     Plaintiffs refused to close their retail store because it is a retail gift shop, not a head shop – hence the name "Planet K Gifts." Thereafter, the City responded by filing a barrage of criminal complaints, illegally terminating water and wastewater services to the store and a residential apartment behind the store, and then filing additional charges for not having plumbing fixtures in the store connected to water and wastewater system.

4.     The City has continued to file complaints against Kleinman and AusPro. As of the filing of this lawsuit, the City has filed a total of 175 complaints. The complaints that are based on zoning violations allege that Kleinman and AusPro are operating a head shop that sells "bongs, water pipes, assorted specialty pipes and bowls, and other paraphernalia, items, or products commonly used, intended to be used, or commonly known to be used, for the ingestion, inhalation, preparation, or injection of illegal substances." The City's head shop definition was adopted before the use of hemp and other CBD products were legalized in Texas in 2019, and does not take into account that certain items that were once considered to only be used to smoke marijuana and other illicit substances are now used to legally smoke CBD hemp flower. Smoking hemp is a perfectly legal and oftentimes preferred method of obtaining the medical benefits of CBD.

5.     The City's definition of head shop also does not contain an intelligible scienter requirement, and fails to provide fair notice of what items are prohibited. The City has refused Plaintiffs' requests to help them identify which items in the store the City believes fall within the scope of the head shop definition. The City Attorney stated in a written response that the City is

not interested in "debating the semantics" of the head shop definition. As a result, Plaintiffs are left to guess at their own peril the head shop definition's meaning and application.

6. The City also admits it has not enforced the head shop zoning regulation against any business other than Plaintiffs' because, the City claims, no other business has attempted to operate a head shop in Cedar Park. There are at least three other businesses in Cedar Park which sell the same types of items the City claims makes Plaintiffs' store a head shop, but the City has not designated any of those businesses head shops, shut off their water and wastewater services, or filed criminal complaints against the businesses and their owners.

7. As a result of the City's conduct, Plaintiffs bring this action for declaratory and injunctive relief and money damages under 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. §§ 1983 and 1988, to protect their rights under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343.

9. This action concerns violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, and is asserted through 42 U.S.C. § 1983.

10. This Court has authority to grant the requested declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. §§ 1983 and 1988, and Rules 57 and 65 of the Federal Rules of Civil Procedure.

11. This Court has authority to award Plaintiffs damages under 42 U.S.C. § 1983.

12. This Court has authority to award Plaintiffs their costs and attorney's fees under 42 U.S.C. § 1988.

13.     Venue is proper under 28 U.S.C. § 1391(b)(1) because the City's corporate limits are within this District.

## PARTIES

14.     Plaintiff Michael Kleinman ("Kleinman") is a resident of Travis County, Texas. Kleinman is a limited partner in Plaintiff MMK Holdings, LP, and a limited partner in Plaintiff AusPro Enterprises, LP.

15.     Plaintiff MMK Holdings LP ("MMK Holdings") is a Texas Limited Partnership. MMK Holdings operates retail gift shops in Texas d/b/a Planet K Gifts.

16.     Plaintiff AusPro Enterprises LP ("AusPro") is a Texas Limited Partnership. AusPro owns various commercial properties in Texas, which it leases, among others, to MMK Holdings to operate Planet K Gift shops.

17.     Defendant City of Cedar Park ("City") is a Texas Home-Rule Municipality in Williamson County, Texas, and may be served with citation by serving its City Manager, Brenda Eivens, 450 Cypress Creek Road, Building One, Cedar Park, Texas 78613.

## THE CHALLENGED ORDINANCE

18.     Chapter 11 of the City of Cedar Park Code of Ordinances ("Code") contains the City's zoning regulations ("Zoning Ordinance").[1] Under Section 11.02.064 of the Zoning Ordinance, "head shops" are not permitted to operate within any of the City's zoning districts.

19.     In November 2017, the City adopted the following definition of "head shop" in Section 11.09.001 of its Zoning Ordinance:

> Head Shop. Any retail establishment open to the public that presents, displays, or offers for sale paraphernalia, items, equipment, or products commonly used, intended to be used, or commonly known to be used, for

---

[1] The City's Code of Ordinances is accessible online at
https://z2.franklinlegal.net/franklin/Z2Browser2.html?showset=cedarparkset&collection=cedarpark&doccode=z2Code_z20000001.

the ingestion, inhalation, preparation, or injection of illegal substances, to include any device which has been fabricated, constructed, altered, adjusted, or marked especially for use in the smoking or ingestion of a controlled substance, notwithstanding that it might also be possible to use the device for some other purpose.

20.     Under Section 11.08.003(A) of the Zoning Ordinance, the failure of a property owner or an occupant to comply with any provision of the Zoning Ordinance is a Class C Misdemeanor punishable by a fine up to $2,000.00. This would include operation of a head shop in violation of Section 11.02.064.

21.     Under Section 1.01.011(b) of the Code, the culpable mental state required for a violation of Section 11.08.003(A) is "intent, knowledge, or recklessness." However, if a violation is based on operation of a head shop, the head shop definition requires an additional culpable mental state.

22.     The City's head shop definition is at the center of this controversy.

## FACTUAL ALLEGATIONS

23.     MMK Holdings operates twenty-one Planet K Gifts retail stores in Central Texas, which includes Austin, Cedar Park, San Marcos, New Braunfels, San Antonio, and Bryan.

24.     Each Planet K Gifts stores is located in local retail zoning districts next to other retail businesses, such as convenience stores, restaurants, clothing stores, auto-parts stores, gas stations, coffee shops, and grocery stores.

25.     Through their website and signage in the Planet K Gifts stores, Plaintiffs encourage customers to support the various charities and community service organizations Plaintiffs support, which include,

        − Central Texas Food Bank
        − Caritas of Austin
        − House the Homeless of Austin

- Austin Meals on Wheels
- Austin Pets Alive
- Big Brothers and Sisters
- Inside Books Project of Austin
- Thrive Youth Foundation
- People's Community Clinic of Austin
- Austin Harm Reduction
- Phogg Phoundation
- Brazos Valley Food Bank
- New Braunfels Food Bank
- Hays County Food Bank
- San Antonio Pets Alive
- S.A. Yes! (San Antonio Youth Education Support Project)
- San Antonio Aids Foundation
- Bexar Area Harm Reduction
- Child Safe of San Antonio

26.     In addition to supporting charities and community service organizations, Plaintiffs are involved in their communities. For example, for over fourteen years, Plaintiffs have hosted Halloween celebrations in Austin, and Dia de los Muertos celebrations in San Antonio, with face painting and other events for kids, live art exhibits, vendor booths, charity booths, food trucks, vintage car parades, and memorial balloon releases, with each celebration culminating in a large fireworks display at the end of the evening. These events are sponsored by such reputable local businesses as Spectrum Cable, The Austin Chronicle, Do512 Austin Events Calendar, Do210 San Antonino Events Calendar, and La Prenza Austin Bilingual Newspaper, as well as local FM radio stations KUT 90.5, KUTX 98.9, KISS 99.5, KAZI 88.7, KOOP 91.7, and The Eagle 106.7.

27.     In September 2021, AusPro purchased commercial property at 1511 N. Bell Blvd, Cedar Park, Williamson County, Texas ("Property"). Bell Blvd. is a five-mile stretch of non-toll U.S. Highway 183, and is the main north/south thoroughfare for the City of Cedar Park.

28.     The Property is located in the City's Local Business (LB) zoning district, which is defined by Section 11.02.002 of the Zoning Ordinance, as follows:

> Office and retail businesses that are intended to serve the overall community, with a larger market than the immediate neighborhoods in the area. In order to accommodate the traffic generated from these businesses without negatively impacting the residential neighborhoods, these uses should be located primarily at pulse points or activity nodes where collector and arterial roadways intersect or at arterial roadway intersections. These uses generally serve a larger market than businesses found in a NB district and generally serve a more local market than uses found in the GB district.

29.     There were two buildings on the Property when AusPro bought it. The main building is an older rock home out of which the prior owner operated a retail floral shop for over ten years ("Retail Building"). Access to the Retail Building is from Bell Blvd.

30.     The other building is a detached residential apartment that sits behind the Retail Building ("Residential Apartment"). It is believed the Residential Apartment has been on the Property for more than ten years. Access to the Residential Apartment is from a private driveway that connects with Thompson St., which is a side street off Bell Blvd. The Property does not abut Thompson St., and there is no access to the Retail Building from Thompson St.

31.     After purchasing the Property, AusPro obtained water and wastewater services from the Cedar Park Water Utility, which is wholly owned and operated by the City. The water service is on a single meter that serves both the Retail Building and the Residential Apartment. The Residential Apartment does not have utility services separate from the Retail Building.

32.     AusPro did not apply for a certificate of occupancy for the Retail Building believing one was not needed because the floral shop that previously operated in the Retail Building had a certificate of occupancy and was a retail use, the Planet K Gifts store that was going to operate in the Retail Building would also be a retail use, and therefore there was not going to be a change in the use of an existing building to another use that would require a new certificate of occupancy.

33.     In or about November 2021, AusPro leased the Residential Apartment to an individual for use as a residence. AusPro is obligated to provide the tenant with water, wastewater, and other utility services.

34.     Sometime around the Thanksgiving Holiday in November 2021, MMK Holdings opened the newest Planet K Gifts store in the Retail Building ("Planet K Cedar Park"). Like the other Planet K Gifts stores, Planet K Cedar Park is located near other retail businesses, including the Hill Country Water Garden and Nursery, Walmart Supercenter, O-Reilly Auto Parts, Best Pawn Shop, Veracruz Used Auto Sales, Wegner State Farm Insurance Agent, and CD's Mobile Auto Mechanics.

35.     Also like other Planet K Gifts stores, Planet K Cedar Park sells a wide variety of merchandise, which include a variety of food items and non-alcoholic beverages, clothing items, room décor, cleaning supplies, toiletries, toys, gag gifts, and other miscellaneous items, as well as smoking accessories, such as various brands of cigars, various flavors of pipe tobacco, various brands of snuff tobacco, various brands of cigarettes, loose tobacco for roll-your-own cigarettes, rolling papers, hand pipes, water pipes, vape cartridges, vape pens, vape supplies, CBD hemp flower (buds), CBD edibles, pre-rolled CBD hemp cigarettes, and other CBD items.

36.     On or about December 3, 2021, a City code compliance officer walked into the Planet K Cedar Park store to see what merchandise was offered for sale. Later that day, the City issued a Notice of Violation, which stated, "The Planet K business operating on this property is identified as a Head Shop and is a prohibited use in the LB zoning district." The City demanded that Planet K Cedar Park cease operations. Plaintiffs refused to close the store because Planet K Cedar Park was and is a gift shop, not a head shop.

37.     The City sent another Notice of Violation on or about December 17, 2021, stating that Plaintiffs were operating a head shop and also did not have a certificate of occupancy or permits for their outdoor signs. The City again demanded that Planet K Cedar Park cease operations, but Plaintiffs still refused to close the store.

38.     On December 22, 2021, the City responded by filing a criminal complaint against Kleinman in municipal court for operating a head shop. Plaintiffs still refused to close the store.

39.     In January 2022, the City began filing a barrage of complaints against Kleinman and AusPro for the following alleged violations:

–   "Use prohibited in zoning district" (head shop) in violation of Code Sec. 11.01.032 and Sec. 11.02.064;

–   "No certificate of occupancy" in violation of Code Sec. 3.02.006;

–   "Prohibited roof sign" in violation of Code Sec. 13.05.002(14);

–   "Prohibited pole sign" in violation of Code Sec. 13.05.002(11); and

–   "Unpermitted wall sign" in violation of Code Sec. 13.03.02.04.

40.     The City filed separate complaints for each of the five alleged violations against "AusPro Enterprises, LP d/b/a Planet K," as owner of the Property. The City also filed separate complaints for each of the five alleged violations against "Michael Kleinman," alleging that Kleinman is the sole manager/member/director of AusPro's general partner, Midwave, LLC.

41.     When the criminal complaints did not force Plaintiffs to close their store, the City decided to terminate Planet K Cedar Park's water service. On January 27, 2022, City employees pulled the water meter at the Property. This shut off water service not only to the Retail Building, but also to the occupied Residential Apartment. The City was advised that water to a residence had been shut off, but the City refused to turn the water back on.

42.　　The City failed to give AusPro prior written notice of its intent to terminate water service, as required by its own Code Section 18.01.007(b):

> Termination notice. Except for circumstances requiring immediate action to protect, life or property, termination of service shall not take place prior to the giving of at least five (5) days' notice to the customer by mail of the intention of the City to so terminate. Said notice shall:
>
> (1)　State the reason for the proposed termination;
>
> (2)　State the reason for the proposed termination;
>
> (3)　State the customer's right to a hearing before such termination occurs; and
>
> (4)　State that the customer who desires a hearing must request a hearing by contacting the City Manager at a stated telephone number or in person before the expiration of five (5) days from the date of mailing.

43.　　There were no "circumstances requiring immediate action to protect, life or property" at the Property that would justify termination of water service without notice.

44.　　At some point, the City mailed written notice of termination of water service, but AusPro did not receive the notice until February 23, 2022, nearly a month _after_ the water had already been shut off. The notice letter stated that the reason for termination of water service was AusPro's "failure … to meet the applicable provisions of law," citing Code Section 18.01.007(1), which reads:

> Reasons for termination enumerated. The City shall have the right to disconnect or refuse to connect or reconnect any water and/or wastewater service connection for the following reasons:
>
> (1)　Failure of the water or wastewater service customer to meet the applicable provisions of law;
>
> (2)　Violation by water or wastewater service customer of the rules and regulations pertaining to such service;
>
> (3)　Nonpayment of bills by water or wastewater service customer;

(4)     Payment of a water or wastewater bill or security deposit with a check or draft which is not honored by the drawee;

(5)     Willful and negligent waste of water due to leaks during an established emergency;

(6)     Molesting any meter, seal, or other equipment controlling or regulating the supply of water or wastewater service;

(7)     Theft or diversion and/or use of water or wastewater without payment therefor;

(8)     Vacancy of premises;

(9)     Selling, delivering, or furnishing water without written permission from the City water department, either on or off the consumer's premises; or

(10)    Existence of a known dangerous condition for as long as the condition exists, in which case service may be terminated without notice.

45.     The City's notice of termination went on to state that the "applicable provisions of law" AusPro failed to meet were the violations in the original Notices of Violation, i.e., use prohibited in a zoning district (head shop), no sign permits, and no certificate of occupancy. The Code does not define "applicable provisions of law," nor does it state which "applicable provisions of law" justify termination of water services if a customer fails to meet them. However, the PUC rules and regulations state the reasons a municipality may terminate water services, and the reasons listed by the City are not amongst those listed by the PUC.

46.     The PUC rules and regulations state that water and sewer utilities may only be disconnected for specified reasons, none of which include the reasons given by the City for termination of water service to the Property. *See* 16 Tex. Admin Code § 24.167(a)(2). In fact, the PUC rules and regulations expressly prohibit disconnection of water and sewer utility services for

"failure to comply with regulations or rules regarding anything other than the type of service being provided …." 16 Tex. Admin Code § 24.167(c).

47.     The City's termination of water service to the Property was improper because failure to comply with regulations concerning zoning, sign permits, and certificates of occupancy are not regulations or rules regarding water and wastewater services. Upon information and belief, the City and its Water Utility were aware of these prohibitions and all other PUC rules and regulations when it pulled the water meter at the Property, but chose to ignore them.

48.     More importantly, the City should have immediately turned the water back on after it was notified that water to a residence had been shut off. The City did not claim that a head shop was being operated out of the Residential Apartment, the Residential Apartment did not have any signs, and, upon information and belief, a certificate of occupancy is not required by the City's Code for a continued residential use when no physical changes or additions are made to a property.

49.     Plaintiffs did not close Planet K Cedar Park after the City terminated the water service. Instead, containers of water were brought in for drinking, the lavatory, the toilet, and the residential tenant, and Planet K Cedar Park carried on with its business.

50.     When the store did not close, the City decided to terminate wastewater services to the Property. Without prior notice, City employees came onto the Property in the early morning hours on Saturday, February 5, 2022, before the store opened, and physically obstructed the sewer line with an inflatable bladder, in violation of PUC rules and regulations. When they were done, the City employees left the Property without telling Plaintiffs or anyone else what they had done or why. The Planet K Cedar Park employees discovered later that morning that there was a problem with the sewer line when the toilet backed up and excrement spilled onto the bathroom floor. The

City later sent a construction crew to dig up the sewer line in the store's parking lot and cap it, also in violation of PUC rules and regulations.

51.     Plaintiffs did not close Planet K Cedar Park after the City terminated the wastewater service. Instead, Plaintiffs rented a Porta Potty, put it behind the store where it was not visible to the public, and Planet K Cedar Park carried on with its business.

52.     On February 11, 2022, at a pre-trial conference on the complaints that had been filed as of that time, legal counsel for AusPro and Kleinman asked the attorney representing the City about Plaintiffs being able to come into compliance with the City Code. The City's attorney responded to the effect that the only way Plaintiffs could come into compliance would be to cease operations altogether. At that point, it was obvious the City was not going to accept any efforts by Plaintiffs to try to bring Planet K Cedar Park into compliance; the only thing the City wanted was for Plaintiffs to close Planet K Cedar Park.

53.     Concerned with the City's position, on February 15, 2022, the real estate lawyer representing AusPro on the Code compliance issues wrote to the City Attorney and requested that the City identify the items in the store the City believed justified the head shop designation, and offered to meet with city staff to discuss the matter:

> I am following up on Auspro's request that I discussed with you last week to see if the administrative staff behind the decision to enforce the headshop zoning restriction against Planet K is willing to meet with Planet K to explain the specific products that constitute the headshop classification.
>
> As you mentioned last week, the current enforcement action is the first time the City has attempted to enforce the headshop restriction since the Ordinance was adopted some seven years ago. Planet K would like to know which specific products being sold in the Cedar Park store cause the operation to be classified as a headshop. It is important for Planet K to know what specific products the City claims are not permitted in the zone district so that it can determine how best to operate in compliance with all valid ordinances of the City.

Auspro is eager to understand what constitutes a violation of the headshop prohibition in the eyes of whomever is making the determination. Please advise if such a meeting with you or other attorney representing the City and the staff personnel making the headshop determination is willing to explain it to my client with an in-person meeting.

54. The City Attorney responded that same day, saying that the City was "not interested in arguing or debating the semantics of the [City's] head shop definition" because the "ordinance definition is clear." Yet, in that same paragraph, the City Attorney referred AusPro's lawyer to the statutory definition of "drug paraphernalia" in Section 481.002(17) of the Texas Health and Safety Code, which is not referenced in the City's head shop definition or anywhere else in the Code. In fact, the head shop definition does not even contain the term "drug paraphernalia."

55. Each of the complaints filed against Kleinman and AusPro based on the head shop regulation contain the affidavit of a City code compliance officer, which states:

The business operating at 1511 N. Bell Blvd. is "Planet K," a retail establishment that presents, displays, or offers for sale bongs, water pipes, assorted specialty pipes and bowls, and other paraphernalia, items, or products commonly used, intended to be used, or commonly known to be used, for the ingestion, inhalation, preparation, or injection of illegal substances.

Based on the items I observed being presented, displayed, or offered for sale, the business operating at 1511 N. Bell Blvd. is a "head shop" as defined in Section 11.09.001 of the Cedar Park Code of Ordinances.

56. The terms "bongs, water pipes, assorted specialty pipes, and bowls" are not mentioned or defined in the head shop definition or anywhere else in the Code. Based on the content of these affidavits, the City has apparently granted to its code compliance officers the discretion to determine what types of paraphernalia, items, or products are "commonly used, intended to be used, or commonly known to be used, for the ingestion, inhalation, preparation, or injection of illegal substances," and also the authority to make the determination whether a business is operating as a head shop. The City's head shop definition, however, does not provide

14

any standards to assist and guide persons charged with enforcement in making those determinations in a manner that is objective, consistent, and avoids arbitrary and discriminatory enforcement.

57.     Other than the complaints filed against Kleinman and AusPro, the City has never initiated any action against a business for operating a head shop in Cedar Park.  The City attorney admitted this in his February 15, 2022, letter to AusPro's lawyer:

> The City has not had occasion to enforce its head shop regulation prior to Planet K's commencement of operations, simply because no one has previously attempted to operate a head shop in Cedar Park in contravention of the ordinance.

58.     There are at least three retail businesses in Cedar Park that are similarly situated with Planet K Cedar Park and sell the same types of items sold at Planet K Cedar Park that the City claims makes Planet K Cedar Park a head shop.

59.     The first similarly situated business is Higherluck Grocery, 1906 N Bell Blvd., Cedar Park, Texas 78613, which is located approximately 4 city blocks (2,100 feet) to the north of Planet K Cedar Park. Higherluck Grocery displays for sale a number of the same types of smoking accessories as those at Planet K Cedar Park, including rolling papers, hand pipes, water pipes, bowls, vaping supplies, CBD edibles, CBD infused beverages, various brands of cigars, various brands of snuff tobacco, and various brands of cigarettes. In addition to smoking accessories, Higherluck Grocery also carries food items, non-alcoholic beverages, beer and wine, toys, novelties, clothing items, cleaning supplies, and toiletries.

60.     The second similarly situated business is Pinnacle Essentials, 1625 N Bell Blvd. Suite A, Cedar Park, Texas 78613, which is located approximately 1.25 city blocks (500 feet) to the north of Planet K Cedar Park. Pinnacle Essentials displays for sale a number of the same types of smoking accessories as those at Planet K Cedar Park, including vaporizers, CBD cartridges,

Delta 8, Delta 10, and other CBD infused edibles, CBD hemp flower, Delta 8 hemp flower, rolling papers and hemp cones, pre-rolled hemp cigarettes and joints, and a selection of various glass hand pipes and water pipes.

61. The third similarly situated business is Drip-n-Rip Vapes, 401 E Whitestone Blvd., Suite A-103, Cedar Park, Texas 78613, which is approximately one-half mile (2,600 feet) from Planet K Cedar Park. Drip-n-Rip Vapes displays for sale a number of the same types of smoking accessories as those at Planet K Cedar Park, including vaporizers and glass hand pipes and water pipes.

62. Despite the fact that Higherluck Grocery, Pinnacle Essentials, and Drip-n-Rip Vapes sell the same types of smoking accessories as those at Planet K Cedar Park, the City has not terminated water or wastewater services to any of those businesses, the City has not designated any of those businesses a head shop, and the City has not filed criminal complaints against any of those businesses for operating of a head shop. This means one of two things: (i) the City does not believe that the items sold by those three businesses fall within the definition of head shop, and therefore the City has sworn out 175 false complaints against Plaintiffs, in violation of Plaintiffs' rights to Due Process; or (ii) the City is intentionally treating Plaintiffs differently from others similarly situated without a rational basis for doing so, in violation of Plaintiffs' rights to Equal Protection.

63. There is no conceivable rational basis for the City to designate Planet K Cedar Park a head shop under its head shop definition, but not also designate Higherluck Grocery, Pinnacle Essentials, and Drip-n-Rip Vapes as head shops. The relevant inquiry is not whether the City has a rational basis for designating Planet K Cedar Park a head shop, but whether the City has a rational basis for treating Plaintiffs differently than Higherluck Grocery, Pinnacle Essentials, and Drip-n-

Rip Vapes. *See DM Arbor Court, Ltd. v. City of Houston*, No. H-18-1884, 2021 U.S. Dist. LEXIS 203015, at *86 (S.D. Tex. 2021) ("The relevant inquiry is not whether the City had a rational basis for denying the permits, but whether it had a "rational basis for the differential treatment"" (citing *Da Vinci Inv., Ltd. P'ship v. City of Arlington, Tex.*, 747 F. App'x 223, 227 (5th Cir. 2018)). The definition contains no exceptions, limitations, or any other language upon which a rational distinction could be made between Planet K Cedar Park and the three businesses similarly situated insofar as the head shop designation is concerned.

64.     The fact of the matter is that the "bongs, water pipes, assorted specialty pipes and bowls, and other items" listed in the City's complaints are used to smoke CBD hemp flower, which are the buds of the female hemp plant. Marijuana and hemp are two different strains of Cannabis. For all practical purposes, they look alike, they smell alike, and their flowers (buds) are physically identical. Chemically, both have a significant amount of the medically beneficial compound cannabidiol (CBD). The most important distinction between marijuana and hemp is that the predominant compound in marijuana is the psychoactive tetrahydrocannabinol (THC), whereas hemp contains < 0.3% THC and therefore its predominant compound is CBD.

65.     The use of hemp and CBD in any form has been legal in Texas since 2019, including smoking CBD hemp flower. There are two important benefits to smoking CBD hemp flower as compared to consuming CBD in edible form. The most noticeable benefit is that the effects of CBD are felt much more quickly when smoked because CBD enters the bloodstream almost immediately and is transported to the brain in less than a minute. When eaten, however, it can take 2-4 hours to feel the effects because the CBD must first be absorbed in the stomach and then metabolized in the liver.

66.     The second significant benefit to smoking CBD hemp flower is that it increases the CBD's bioavailability, which is expressed as the percentage of the total CBD ingested that is available for absorption and use in the body. Approximately 50% of CBD in hemp that is smoked enters the lungs, almost all of which enters the bloodstream and is immediately available to the body, as opposed to an average of only around 12-20% of CBD that is consumed orally and available beginning around two hours after ingestion.

67.     The potential health benefits of CBD are significant. Medical studies indicate that CBD can control intractable epilepsy, relieve chronic pain, inflammation, anxiety, and insomnia, and lessen cravings for tobacco, heroin, opiates, alcohol, and stimulants.[2] These benefits are of particular importance considering the current opioid crisis.

68.     In addition to Planet K Cedar Park, there are at least four other retail businesses in Cedar Park which sell CBD hemp flower and pre-rolled CBD hemp cigarettes: Drip n Rip Vapes, 401 Whitestone Blvd. #A103, Cedar Park, Texas 78613; Pinnacle Essentials, 1625 N Bell Blvd. Suite A, Cedar Park, Texas 78613; Artisan Vapor & CBD, 251 N. Bell Blvd. Suite 104, Cedar Park, Texas 78613; and CBD American Shaman of Cedar Park, 700 E Whitestone Blvd. Suite #103, Cedar Park, Texas 78613. The sale of these hemp items is 100% legal, and reinforces the fact that smoking hemp is a popular method of taking advantage of the medical benefits of CBD.

69.     Smoking CBD hemp flower can only be done using pipes and water pipes (with or without a bowl). Planet K Cedar Park legally sells CBD hemp flower and it legally sells the items needed to smoke CBD hemp flower, which are the same types of items the City claims makes

---

[2] Capano, et al., *Evaluation of the effects of CBD hemp extract on opioid use and quality of life indicators in chronic pain patients: a prospective cohort study*, Postgrad Med. 2020 Jan;132(1):56-61; Morgan, et al., *Cannabidiol reduces cigarette consumption in tobacco smokers: preliminary findings*, Addict Behav. 2013 Sep;38(9):2433-6; Boehnke K, et al., *Substituting Cannabidiol for Opioids and Pain Medications Among Individuals With Fibromyalgia: A Large Online Survey*, J Pain. 2021 Nov; 22(11):1418-1428.

Planet K Cedar Park a head shop. The City's head shop definition was adopted before hemp and CBD were legalized in Texas, at a time when certain smoking accessory items were deemed to be used only to smoke marijuana and other controlled substances. That is no longer the case. Items used to smoke the marijuana flower are now multi-use items used to smoke the hemp flower.

70.     Plaintiffs have offered to resolve the sign violations and try to come into compliance with the City Code, but the City refuses to even discuss that possibility. The City's position is that it will not issue Planet K Cedar Park sign permits until a Certificate of Occupancy is issued, which the City says it will not issue because it deems Planet K Cedar Park to be a head shop and the only option for Plaintiffs at this point is to cease operations altogether. For this reason, everything hinges and is dependent upon the City's head shop definition.

71.     Kleinman spoke before the City Council on two occasions. He asked that the City engage in a meaningful dialogue to try to find a solution to these issues. The City Council refused.

72.     On May 11, 2022, two City code compliance officers, accompanied by three police officers, showed up to Planet K Cedar Park with a search warrant. The warrant was limited to a search to determine the presence of fire or health hazards or unsafe building conditions, or violations of any fire, health, or building regulation, statute, or ordinance of the City of Cedar Park or State of Texas, including operating without a certificate of occupancy, failure to provide minimum number and type of plumbing fixtures, failure to provide customers, patrons, visitors, and employees with toilet facilities, failure to maintain existing plumbing fixtures in operating condition, and the presence of any plumbing code violations.

73.     While one of the code compliance officers searched the Retail Building allegedly for potential violations, the other code compliance officer began taking photographs and videos of all of the merchandise in the store, without permission. Taking photographs and videos of the retail

merchandise was outside the scope of the search warrant, it was without permission, and, based on information and belief, it used the search warrant as a pretext to gather evidence of items offered for sale in the store.

74.     On May 18, 2022, the City filed four new complaints with new allegations against Kleinman, and four new complaints with new allegations against AusPro, as a result of the search conducted on May 11, 2022. The new complaints allege the following:

   – "Failure to maintain existing plumbing fixtures" (fixtures not connected to water or wastewater system) in violation of Code Sec. 3.01.001(c);

   – "Failure to provide minimum plumbing fixtures" (toilet, faucets, and lavatory not connected to running water, and no working drinking fountain) in violation of Code Sec. 3.02.006;

   – "Failure to provide toilet facilities" (toilet not working because not connected to running water) in violation of Code Sec. 3.01.001(c); and

   – "Failure to provide and maintain sanitary toilet accommodations" (toilet is not connected to running water and therefore is not sanitary) in violation of Texas Health and Safety Code Section 341.061.

75.     The City seeks a total of $8,538.00 in criminal penalties against Kleinman and AusPro for these four new charges.

76.     These four new charges are based on the fact that plumbing fixtures in Planet K Cedar Park are not connected to a water or wastewater system, which the City terminated illegally three months prior. The code compliance officer who executed the search warrant made the following statements in his affidavits in support of these new complaints:

   I turned on two (2) existing faucets and no water ran out … I also tried the handle on the toilet and it had no water … The existing service sink had no running water either … [and] I determined there is no running water or functioning toilets on the premises ….

77.     The City has criminally charged Kleinman and AusPro for conditions in Planet K Cedar Park that were caused by the City's illegal termination of water and wastewater to the Property.

78.     Upon information and belief, the purpose of the repeated municipal complaints against Kleinman and AusPro are not to obtain convictions, but rather are intentional acts of harassment to try to force Plaintiffs to shut down Planet K Cedar Park because the City simply does not want a Planet K Gifts store in its town for improper reasons. This is demonstrated, in part, by the fact that the City has not filed similar complaints against other businesses similarly situated, has refused to engage in any discussions to identify what items in the Planet K Cedar Park store resulted in the City's subjective determination that Plaintiffs are operating a head shop, has refused to engage in discussions designed to facilitate compliance with the City's Code, and has made statements that compliance could only be achieved through the cessation of operations altogether. Instead of tailoring its conduct to facilitate the cessation of what it believes to be violative conduct, the City has purposefully used municipal complaints and improper termination of water and wastewater services as tools of harassment to try to get Plaintiffs to leave Cedar Park.

79.     The tenant who moved into the Residential Apartment in November 2021 later moved out because of the termination of water and wastewater services. AusPro thereafter leased the Residential Apartment to another individual for use as a residence. AusPro is obligated to provide the current tenant with water, wastewater, and other utility services.

80.     As a result of the City's termination of water and wastewater services to the Property, Plaintiffs have incurred costs and expenses to provide water and portable toilet facilities for the store and to its employees, customers, and tenant totaling approximately $1,537 as of the filing of this lawsuit.

81.     The City has continued to file complaints with the municipal court almost on a weekly basis. As of the date of the filing of this lawsuit, the City has filed 175 complaints against Kleinman and AusPro, seeking a total of $120,915.00 in criminal penalties.

82.     MMK Holdings is the entity which operates Planet K Cedar Park, not AusPro. As of the filing of this lawsuit, the City has not filed any complaints against MMK Holdings.

## CLAIMS

**COUNT ONE:** *Due Process (Vague and Overbroad)*

83.     The forgoing paragraphs are incorporated herein.

84.     The head shop definition violates and deprives Plaintiffs of their rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution because, on its face and as applied, the definition is unconstitutionally vague and overbroad in that it fails to provide people of ordinary intelligence a reasonable opportunity to understand what items fall within the scope of the definition and therefore what conduct is proscribed as it relates to operation of a head shop, and also authorizes, facilitates, and encourages arbitrary and discriminatory enforcement by not providing explicit standards, definitions, narrowing context, or examples to guide those charged with its enforcement, including compliance officers, law enforcement, prosecutors, courts, and juries.

85.     The definition lacks any intelligible or ascertainable culpable mental state requirement. The "commonly used, intended to be used, or commonly known to be used" standards are written in the disjunctive and therefore a person may be convicted for offering for sale an item that is "commonly used" or "commonly known to be used" to ingest an illegal substance. The "commonly used" and "commonly known to be used" standards are not culpable mental states and therefore the definition allows a person to be convicted of a crime without proof of any culpable

mental state. With respect to the "intended to be used" standard, the definition does not state whose intent is required and therefore this standard is not a culpable mental state requirement.

86.     The definition does not define or offer any guidance to determine the scope and meaning of the "commonly used, intended to be used, or commonly known to be used" standards, including whether any or all of the standards are subjective or objective, how each standard is to be determined, what percentage of use constitutes "commonly used," or to whom an item must be "commonly known to be used" to ingest an illegal substance.

87.     The definition criminalizes the sale of items that have a legitimate, legal use, including items used to ingest products which may legally be sold and ingested in Texas.

88.     As applied to Plaintiffs, the definition has deprived, continues to deprive, and threatens to deprive them of their right to engage in their chosen business and sell merchandise of their choosing, such as hand pipes, water pipes, and other items, which have legitimate, legal uses, including items used to smoke CBD hemp flower, which Plaintiffs sell in Planet K Cedar Park.

89.     As a result of the City's application of the head shop definition to Planet K Cedar Park, as well as the City's refusal to assist Plaintiffs in identifying which items in the store the City believes fall within the scope of the head shop definition, Plaintiffs are left to guess at their own peril the definition's meaning and application, and the determination of whether Planet K Cedar Park is considered to be operating a head shop is left to the discretion and the subjective and semantical interpretation of code compliance officers, the City Attorney, and other City employees, which has resulted, among other things, in the City's improper termination of water and wastewater services to the Property, as well as the City's refusal to work with Plaintiffs to come into compliance with the City Code.

**COUNT TWO:** *Due Process (Termination of Utility Services)*

90.     The forgoing paragraphs are incorporated herein

91.     Plaintiffs have a recognized and constitutionally protected right to utility services, and the City's termination of water and wastewater services to the Property violated and deprived, and continues to violate and deprive, Plaintiffs of their rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution because the City failed to give fair notice of the termination of utility services, and the termination was in violation of the express provisions and prohibitions of the rules and regulations of the Public Utility Commission of the State of Texas.

92.     The City failed to provide Plaintiffs adequate and fair notice of its intent to terminate water service to the Property, as required by Section 18.01.007(b) of the City Code.

93.     The City terminated wastewater services to the Property without any prior notice, in violation of Section 18.01.007(b) of the City Code.

94.     The City's termination of water and wastewater services to the Property violated the rules and regulations of the PUC rules and regulations. Specifically, PUC Rule 24.167(c) prohibits disconnection of water and sewer utility services for "failure to comply with regulations or rules regarding anything other than the type of service being provided …." 16 Tex. Admin Code § 24.167(c).

95.     The City's stated grounds for termination of water service to the Property was Plaintiffs' alleged failure to comply with the City's regulations concerning zoning, sign permits, and certificates of occupancy, none of which are regulations or rules regarding water and wastewater services.

96.     The City also terminated water and wastewater services to the Residential Apartment without fair notice and in violation of the PUC rules and regulations, despite the fact

that the City does not now nor has it ever alleged that a head shop is being operated out of the Residential Apartment, or that the Residential Apartment has unpermitted signs, or that a certificate of occupancy was required for the Residential Apartment.

**COUNT THREE:** *Equal Protection*

97.     The forgoing paragraphs are incorporated herein.

98.     The City's intentional and purposeful treatment of Plaintiffs differently from the three other businesses similarly situated, without a rational basis for the disparate treatment, violates and deprives Plaintiffs of their rights as a class of one under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

99.     Despite the fact that the three similarly situated businesses described hereinabove sell the same types of smoking accessories as those at Planet K Cedar Park, the City has not terminated water or wastewater services to any of those businesses, the City has not designated any of those businesses a head shop, and the City has not filed criminal complaints against any of those businesses for operating of a head shop.

100.    There is no conceivable rational basis for the City to designate Planet K Cedar Park a head shop under its head shop definition, but not also designate these three other similarly situated businesses as head shops. The relevant inquiry is not whether the City has a rational basis for designating Planet K Cedar Park a head shop, but whether the City has a rational basis for treating Plaintiffs differently than the three similarly situated businesses.

**COUNT FOUR:** *Violation of Texas Penal Code*

101.    The forgoing paragraphs are incorporated herein.

102.    The head shop is void and unenforceable because it violates the Texas Penal Code.

103. Section 6.02(f) of the Texas Penal Code provides that an offense defined by a municipal ordinance may not dispense with the requirement of a culpable mental state if the offense is punishable by a fine exceeding $500.00.

104. Section 11.08.003(A) of the Zoning Ordinance defines the offense of failure of a property owner or an occupant to comply with any provision of the Zoning Ordinance as a Class C Misdemeanor punishable by a fine up to $2,000.00, which would include operation of a head shop in violation of Section 11.02.064.

105. While Section 1.01.011(b) of the Code provides the "intent, knowledge, or recklessness" culpable mental state required for a violation of Section 11.08.003(A), a violation based on operation of a head shop requires an additional culpable mental state for the application of the head shop definition.

106. The City's Zoning Ordinance, as it applies to a violation of Section 11.08.003(A) based on operation of a head shop, violates Section 6.02(f) of the Texas Penal Code because the head shop definition's "commonly used, intended to be used, or commonly known to be used" standards are stated in the disjunctive. Therefore, a person can be convicted of a Class C Misdemeanor, and fined up to $2,000.00, if the person operates a "retail establishment open to the public that presents, displays, or offers for sale paraphernalia, items, equipment, or products commonly used … or commonly known to be used, for the ingestion, inhalation, preparation, or injection of illegal substances, to include any device which has been fabricated, constructed, altered, adjusted, or marked especially for use in the smoking or ingestion of a controlled substance, notwithstanding that it might also be possible to use the device for some other purpose."

107. The head shop definition's "commonly used" and "commonly known to be used" standards are without question not culpable mental states and therefore the City has dispensed with

a mandatory culpable mental state for violation of an ordinance that is punishable by a fine exceeding $500.00.

**COUNT FIVE:** *Monetary Damages*

108.     The foregoing paragraphs are incorporated herein.

109.     Plaintiffs seek compensatory damages for the costs and expenses to provide water and portable toilet facilities to its employees, customers, and tenant, which total approximately $1,537 as of the filing of this lawsuit. These costs and expenses were incurred as a result of the City's improper termination of water and wastewater services, which was the legal and proximate cause of such damages.

**COUNT SIX:** *Declaratory Relief*

110.     The foregoing paragraphs are incorporated herein.

111.     Plaintiffs request the Court to declare that the City's termination of water and wastewater services violates Plaintiffs' rights under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the head shop definition is unconstitutional and is unenforceable as applied to Plaintiffs, and the head shop definition violates the Texas Penal Code and is therefore void and unenforceable.

**COUNT SEVEN:** *Injunctive Relief*

112.     The foregoing paragraphs are incorporated herein.

113.     Upon application, Plaintiffs request the Court to grant a temporary restraining order and issue a temporary injunction requiring the City to restore water and wastewater services to the Property.

114.     Upon a trial on the merits, Plaintiffs request the Court to grant permanent injunctive relief prohibiting the City and its employees, agents, and successors in officer, and anyone acting

in concert with them or at their direction, from terminating the water or wastewater service to the Property based in whole or in part on the City's head shop definition.

## DEMAND FOR JURY TRIAL

115.    Plaintiffs demand a trial by jury.

## RELIEF REQUESTED

Plaintiffs respectfully request that this Court grant the following relief:

(1)    Assume jurisdiction over Plaintiffs' claims;

(2)    Issue a preliminary injunction requiring the City to restore water and wastewater services to the Property;

(3)    Issue a declaratory judgment that the City's termination of water and wastewater services pursuant to Code Section 18.001.07(1) is a violation of Plaintiffs' rights under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

(4)    Issue a declaratory judgment that the City's head shop definition is unconstitutional and is unenforceable as applied to Plaintiffs;

(5)    Issue a declaratory judgment that the City's head shop definition violates the Texas Penal Code and therefore is void and unenforceable;

(6)    Issue a permanent injunction prohibiting the City and its employees, agents, and successors in office, and anyone acting in concert with them or at their direction, from terminating the water or wastewater service to the Property based in whole or in part on the City's head shop definition;

(7)    Award Plaintiffs their actual damages for costs incurred in connection with the loss of the water and wastewater services at the Property;

(8)     Award Plaintiffs their costs and attorney's fees; and

(9)     Grant such other legal and equitable relief to which Plaintiffs are entitled or the

Court may deem just, proper, and equitable.

Respectfully submitted,

**SPROUSE SHRADER SMITH PLLC**

*/s/ Jeffrey G. Henry*
Jeffrey G. Henry
State Bar No. 09479440
Email: *jeff.henry@sprouselaw.com*
SPROUSE SHRADER SMITH PLLC
805 Las Cimas Parkway, Suite 350
Austin, Texas 78746
Telephone: (512) 615-6650
Facsimile: (512) 382-6644

Tim Williams
State Bar No. 24067940
Email: *tim.williams@sprouselaw.com*
SPROUSE SHRADER SMITH PLLC
P.O. Box 15008
Amarillo, Texas   79105-5008
Telephone: (806) 468-3300
Facsimile: (806) 373-3454

**ATTORNEYS FOR PLAINTIFFS**