UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MICHAEL KLEINMAN, | § | |
| MMK HOLDINGS, LP, and | § | |
| AUSPRO ENTERPRISES, LP, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | CIVIL ACTION NO. 1:22-cv-00527 |
| v. | § | |
| | § | |
| CITY OF CEDAR PARK, | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Sprouse Shrader Smith PLLC
Jeffrey G. Henry
State Bar No. 09479440
Email: *jeff.henry@sprouselaw.com*
805 Las Cimas Parkway, Suite 350
Austin, Texas 78746
Telephone: (512) 615-6650
Facsimile: (512) 382-6644

And

Sprouse Shrader Smith PLLC
Tim Williams
State Bar No. 24067940
Email: *tim.williams@sprouselaw.com*
701 S. Taylor Street, Suite 500 (79101)
P.O. Box 15008
Amarillo, Texas   79105-5008
Telephone: (806) 468-3300
Facsimile: (806) 373-3454

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES.................................................................................iii

STATEMENT OF CASE ................................................................................. 1

LEGAL AUTHORITIES ................................................................................ 8

GROUNDS FOR PRELIMINARY INJUNCTION ................................................. 9

    A.  Substantial Likelihood of Success on the Merits........................................ 9

        1.  The City terminated Plaintiffs' water and wastewater services for reasons unrelated to those services. .................................................................. 10

        2.  The City failed to provide Plaintiffs with adequate notice of termination of water and wastewater services. .......................................................... 12

    B.  Irreparable Harm ........................................................................... 14

    C.  Threatened Injury Outweighs any Harm................................................ 16

    D.  Injunction will not Disserve Public Interests ........................................... 17

BOND ...................................................................................................... 17

PRAYER.................................................................................................... 18

# INDEX OF AUTHORITIES

**Cases**

*Condosta v. Vermont Electric Cooperative, Inc.*, 400 F.Supp. 358 (D. Vt. 1974) ........................ 9

*Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792 (10th Cir. 2019) ................. 16

*Jackson Women's Health Org. v. Currier*, 760 F.3d 448 (5th Cir. 2014) ...................................... 8

*Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1469 (96th Cir. 1993)......... 14

*Memphis Light, Gas & Water v. Craft*, 436 U.S. 1 (1978) ............................................. 8, 9, 15, 17

*Mullane v. Central Hanover Trust Co.*, 339 U.S. 306 (1950) ........................................................ 9

*Olson v. Puckett*, No. 2:21-CV-1482-KJM-DMC, 2021 U.S. Dist. LEXIS 177707 (E.D. Cal.

2021)............................................................................................................................... 14

*Opulent Life Church v. City of Holly Springs Miss.*, 697 F.3d 279 (5th Cir. 2012) ..................... 16

*Palmer v. Columbia Gas of Ohio, Inc.*, 479 F.2d 153 (6th Cir. 1973) ........................................... 9

*Ransom v. Marrazzo*, 848 F.2d 398 (3d Cir. 1988) ........................................................................ 9

*Verlo v. Martinez*, 820 F.3d 1113 (10th Cir. 2016) ..................................................................... 17

**Other Authorities**

16 Tex. Admin Code § 24.167(a)(1)............................................................................................. 14

16 Tex. Admin Code § 24.167(a)(2)......................................................................................... 7, 10

16 Tex. Admin Code § 24.167(c) .................................................................................................. 7

16 Tex. Admin Code § 24.167(c)(7)............................................................................................ 10

16 Tex. Admin Code § 24.3(31) .................................................................................................. 10

16 Tex. Admin Code § 24.377...................................................................................................... 10

16 Tex. Admin Code §24.1........................................................................................................... 10

TO THIS HONORABLE COURT:

Plaintiffs file this motion for preliminary injunction requesting that the Court order the City of Cedar Park to immediately restore water and wastewater services.[1] As explained by the U.S. Supreme Court, Plaintiffs have a constitutionally protected property interest in the utility services improperly terminated by the City. The City terminated Plaintiffs' water and wastewater services without providing sufficient notice, and the grounds identified in the belated notice of termination run afoul of Texas law. The City's purported grounds for termination stem from the enforcement of a vague, unconstitutional ordinance under which the City classified Plaintiffs' business as a "head shop." The City's termination of Plaintiffs' water and wastewater services constitutes a deprivation of Plaintiffs' protected property rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## STATEMENT OF CASE

Plaintiffs own and operate twenty-one Planet K Gifts retail stores throughout Central Texas, including Austin, Cedar Park, San Marcos, New Braunfels, San Antonio, Bryan, Round Rock, and Bee Cave. The first store was opened in 1990. MMK Holdings, LP, operates the Planet K Gifts stores. AusPro Enterprises, LP, owns various real property, including real property leased by MMK Holdings for Planet K Gifts stores. Kleinman is a limited partner of both AusPro and MMK Holdings.

In September 2021, AusPro purchased the property at 1511 N. Bell Boulevard, Cedar Park, Williamson County, Texas ("Property"). Bell Boulevard is a five-mile stretch of non-toll U.S. Highway 183, and is the main north/south thoroughfare for the City of Cedar Park. The Property is located in the City's Local Business (LB) zoning district.

---

[1] Attached in support of this Application for Injunction is the Declaration of Michael Kleinman.  Ex. A (APPX. 001-020.)

There were two buildings on the Property when AusPro bought it. The main building is an older rock home out of which the prior owner operated a retail floral shop for over ten years ("Retail Building"). Access to the Retail Building is from Bell Boulevard. The other building is a detached residential apartment that sits behind the Retail Building ("Residential Apartment"). It is believed the Residential Apartment has been on the Property for more than ten years. Access to the Residential Apartment is from a private driveway that connects with Thompson Street, which is a side street off Bell Boulevard. The Property does not abut Thompson Street, and there is no access to the Retail Building from Thompson Street.

After purchasing the Property, AusPro obtained water and wastewater services from the Cedar Park Water Utility, which is wholly owned and operated by the City. The water service is on a single meter that serves both the Retail Building and the Residential Apartment. The Residential Apartment does not have utility services separate from the Retail Building.

In or about November 2021, AusPro leased the Residential Apartment to an individual for use as a residence. AusPro is obligated to provide the tenant with water, wastewater, and other utility services.

Sometime around the Thanksgiving Holiday in November 2021, MMK Holdings opened the newest Planet K Gifts store in the Retail Building ("Planet K Cedar Park"). Like other Planet K Gifts stores, Planet K Cedar Park sells a wide variety of merchandise, which include a variety of food items and non-alcoholic beverages, clothing items, room décor, cleaning supplies, toiletries, toys, gag gifts, and other miscellaneous items, as well as smoking accessories, such as various brands of cigars, various flavors of pipe tobacco, various brands of snuff tobacco, various brands of cigarettes, loose tobacco for roll-your-own cigarettes, rolling papers, hand pipes, water

pipes, vape cartridges, vape pens, vape supplies, CBD hemp flower (buds), CBD edibles, pre-rolled CBD hemp cigarettes, and other CBD items.

On or about December 3, 2021, the City issued a Notice of Violation to Kleinman, which stated, "The Planet K business operating on this property is identified as a Head Shop and is a prohibited use in the LB zoning district." The City's zoning ordinance prohibits operation of a "head shop" in any of its zoning districts. The City's zoning ordinance defines "head shop" as a business that offers for sale any item that is "commonly used, intended to be used, or commonly known to be used" to ingest or inhale an illegal substance, even if the item can also be used for another purpose.  The City demanded that Planet K Cedar Park cease operations. Plaintiffs refused to close the store because Planet K Cedar Park was and is a gift shop, not a head shop.

On December 17, 2021, the City issued another Notice of Violation, alleging that Planet K Cedar Park was a head shop and also alleging a failure to obtain a certificate of occupancy and having signs without permits. The City again demanded that Planet K Cedar Park cease operations, and Plaintiffs again refused to do so.

On December 22, 2021, the City responded by filing a complaint against Kleinman in municipal court alleging that he was operating a head shop in violation of the City's zoning ordinances. Plaintiffs still refused to close the store.

In January 2022, the City began filing a barrage of complaints against Kleinman and AusPro for the following alleged violations:

- "Use prohibited in zoning district" (head shop) in violation of Code Sec. 11.01.032 and Sec. 11.02.064;
- "No certificate of occupancy" in violation of Code Sec. 3.02.006;
- "Prohibited roof sign" in violation of Code Sec. 13.05.002(14);
- "Prohibited pole sign" in violation of Code Sec. 13.05.002(11); and
- "Unpermitted wall sign" in violation of Code Sec. 13.03.02.04.

The City filed separate complaints for each of the five alleged violations against "AusPro Enterprises, LP d/b/a Planet K," as owner of the Property. The City also filed separate complaints for each of the five alleged violations against "Michael Kleinman," alleging that Kleinman is the sole manager/member/director of AusPro's general partner, Midwave, LLC.[2]

When the complaints did not convince Plaintiffs to close their store, the City decided to terminate Planet K Cedar Park's water service. On January 27, 2022, without giving the required prior notice, City employees pulled the water meter at the Property. This shut off water service not only to the Retail Building, but also to the occupied Residential Apartment. The City was advised that water to a residence had been shut off, but the City refused to turn the water back on. Plaintiffs did not close Planet K Cedar Park after the City terminated the water service. Instead, containers of water were brought in for drinking, the lavatory, the toilet, and the residential tenant, and Planet K Cedar Park carried on with its business.

About one week after terminating water service to the Property, the City decided to terminate wastewater services to the Property. Again, without giving the required prior notice, City employees came onto the Property in the early morning hours on Saturday, February 5, 2022, before the store opened, and physically obstructed the sewer line with an inflatable bladder, in violation of PUC rules and regulations. When they were done, the City employees left the Property without telling Plaintiffs or anyone else what they had done or why. The Planet K Cedar Park employees discovered later that morning that there was a problem with the sewer line when the toilet backed up and excrement spilled onto the bathroom floor. The City later sent a construction crew to dig up the sewer line in the store's parking lot and cap it, also in violation of PUC rules and regulations.   Plaintiffs did not close Planet K Cedar Park after the City terminated the

---

[2] As of the date of the filing of this Motion, the City has filed over 200 complaints against Kleinman and AusPro.

wastewater service. Instead, Plaintiffs rented a Porta Potty, put it behind the store where it was not

visible to the public, and Planet K Cedar Park carried on with its business.

The City failed to give AusPro the required five days' prior written notice of its intent to

terminate water and wastewater services, as required by its own Code Section 18.01.007(b):

> Termination notice. Except for circumstances requiring immediate action to
> protect, life or property, termination of service shall not take place prior to
> the giving of at least five (5) days' notice to the customer by mail of the
> intention of the City to so terminate. Said notice shall:
> (1)  Be sent by mail to the last known billing address of the customer;
> (2)  State the reason for the proposed termination;
> (3)  State the customer's right to a hearing before such termination
>       occurs; and
> (4)  State that the customer who desires a hearing must request a
>       hearing by contacting the City Manager at a stated telephone
>       number or in person before the expiration of five (5) days from
>       the date of mailing.

There were no "circumstances requiring immediate action to protect, life or property" at the

Property that would justify termination of water service without notice.

At some point, the City mailed written notice of termination of water and wastewater

services, but AusPro did not receive the notice until February 23, 2022, nearly a month after the

City shut off the water and almost three weeks after the wastewater service was terminated. The

notice letter stated that the reason for termination of water and wastewater service was AusPro's

"failure … to meet the applicable provisions of law," citing Code Section 18.01.007(1). The

tracking information on the letter that arrived on February 23, 2022, reflects that it arrived at the

USPS Regional Facility in Austin, Texas on January 24, 2022, a mere three days before the City

terminated water services.  Ex. B (APPX. 021-022).

The next entry in the tracking history is dated February 22, 2022, and states "In Transit to Next Facility." The tracking history reflects the letter was delivered on February 23, 2022 at 11:01 a.m.[3] Ex. B (APPX. 021-022).

After the filing of this lawsuit, the City provided Plaintiffs with a copy of another Certified Mail Receipt for a second notice letter, which reflected that delivery was unsuccessful at the Planet K location in Cedar Park.[4] Again, the tracking history reflects the letter originated on January 24, 2022, a mere three days before the City terminated water services.  Ex. C (APPX. 023-026). The tracking history reflects that on January 29, 2022, there was "No Access to Delivery Location." The tracking history does not reflect that this second letter was ever received by AusPro or at the Planet K Cedar Park location. Ex. C (APPX. 023-026).

The tracking history reflects that Plaintiffs did not receive the termination notice until nearly a month after the water had been shut off and nearly three weeks after the wastewater service was terminated. Ex. B (APPX. 021-022). Additionally, at the time that the water service and the wastewater service were terminated, the tracking history of the termination notices confirmed that Plaintiffs had not received the required notice. Based on the tracking information to which the City obviously had access, the City knew or should have known that Plaintiffs had not received notice at the time the City terminated water service and wastewater service.  The City's termination of water and wastewater services prior to Plaintiffs' receipt of required notice deprived Plaintiffs of an opportunity to contest the termination of those services before disconnection.

The City's notice of termination went on to state that the "applicable provisions of law" which AusPro allegedly failed to meet were the violations in the original Notices of Violation, i.e.,

---

[3] The City attached the tracking information to its Motion to Dismiss, reflecting "Delivered, Left with Individual" on February 23, 2022.
[4] The City attached the tracking information to its Motion to Dismiss, reflecting "We could not access the delivery location to deliver your package at 9:24 am on January 29, 2022 in CEDAR PARK, TX 78613."

prohibited use in a zoning district (head shop), no sign permits, and no certificate of occupancy. The Code does not define "applicable provisions of law," nor does it state which "applicable provisions of law" justify termination of water services if a customer fails to meet them. However, the Public Utility Commission of Texas rules and regulations state the reasons a municipality may terminate water services, and the reasons listed by the City are not amongst those listed by the PUC.

The PUC rules and regulations state that water and sewer utilities may only be disconnected for specified reasons, none of which include the reasons given by the City for termination of water service to the Property. *See* 16 Tex. Admin Code § 24.167(a)(2). In fact, the PUC rules and regulations specifically prohibit disconnection of water and sewer utility services for "failure to comply with regulations or rules regarding anything other than the type of service being provided …." 16 Tex. Admin Code § 24.167(c). Accordingly, the City expressly violated its own ordinances and the PUC rules and regulations by terminating water service for alleged violations of rules or regulations that did not regard the water services provided.

On May 11, 2022, two City code compliance officers, accompanied by three police officers, showed up to Planet K Cedar Park with a warrant to search the premises to determine the presence of fire or health hazards or unsafe building conditions, or violations of any fire, health, or building regulation, statute, or ordinance of the City of Cedar Park or State of Texas, including operating without a certificate of occupancy, failure to provide minimum number and type of plumbing fixtures, failure to provide customers, patrons, visitors, and employees with toilet facilities, failure to maintain existing plumbing fixtures in operating condition, and the presence of any plumbing code violations.

On May 18, 2022, the City filed four new complaints with new allegations against AusPro and Kleinman based on findings made by the code compliance officer during the search conducted on May 11, 2022. Ex. E (APPX. 031-047). The new complaints allege violations for "failure to maintain existing plumbing fixtures" because plumbing fixtures were not connected to water or wastewater system, "failure to provide minimum plumbing fixtures" because the toilet, faucets, and lavatory were not connected to running water and there was no working drinking fountain, "failure to provide toilet facilities" because the toilet was not working due to the fact it was not connected to running water, and "failure to provide and maintain sanitary toilet accommodations" because the toilet is deemed not sanitary due to the fact that it is not connected to running water.

All of these new charges are based on the fact that the plumbing fixtures in the Planet K Cedar Park store are not connected to water and wastewater services, which the City terminated illegally nearly four months prior to execution of the search warrant. Accordingly, the City has issued complaints against AusPro and Kleinman for conditions in the Planet K Cedar Park store the City created through the illegal termination of the water and wastewater services.

## LEGAL AUTHORITIES

A preliminary injunction will issue on a showing of the following four elements: (1) a substantial likelihood of success on the merits; (2) there is a substantial threat of irreparable injury if the injunction is not issued; (3) the threatened injury outweighs any harm that will result if the injunction is granted; and (4) the injunction will not disserve the public interest. *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 452 (5th Cir. 2014).

In the context of utility services, a vested property interest exists if Plaintiffs can establish a claim to continued service. *See Memphis Light, Gas & Water v. Craft*, 436 U.S. 1, 9-12 (1978). The extent of that right is defined and shaped by state and local law. *See id.* at 11-12. Where state

and local rules limit public utilities' power to discontinue service, customers of that utility have a protected interest in continued service. *Id.*; *see also Palmer v. Columbia Gas of Ohio, Inc.*, 479 F.2d 153 (6th Cir. 1973); *Condosta v. Vermont Electric Cooperative, Inc.*, 400 F.Supp. 358 (D. Vt. 1974).

As explained by the Supreme Court: "Utility service is a necessity of modern life; indeed, the discontinuance of water or heating for even short periods of time may threaten health and safety." *Id.* at 19. Although a utility service may ultimately be restored, the cessation of essential services for any appreciable time works a uniquely final deprivation. *Memphis Light*, 436 U.S. at 20. "[T]he expectation of utility service rises to the level . . . of a 'legitimate claim of entitlement' encompassed in the category of property interests protected by the Due Process Clause." *Ransom v. Marrazzo*, 848 F.2d 398, 409 (3d Cir. 1988).

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted). "[S]ome administrative procedure for entertaining customer complaints prior to termination is required to afford reasonable assurance against erroneous or arbitrary withholdings of essential services." *Memphis Light*, 436 U.S. at 14-15.

## GROUNDS FOR PRELIMINARY INJUNCTION

### A.    Substantial Likelihood of Success on the Merits

Plaintiffs have a substantial likelihood of success because the City terminated water and sewer services in violation of Texas law, in violation of its own Code, and without providing adequate notice.

1.      **The City terminated Plaintiffs' water and wastewater services for reasons unrelated to those services**

The purpose of Chapter 24 of the Texas Administrative Code is to "establish a comprehensive regulatory system under Texas Water Code chapter 13 to ensure that rates, operations, and services are just and reasonable to the consumer and the retail public utilities, and to establish the rights and responsibilities of both the retail public utility and consumer." 16 Tex. Admin Code §24.1. A retail public utility includes any public utility, municipality, political subdivision or agency operating, maintaining, or controlling facilities for providing potable water service or sewer service for compensation. 16 Tex. Admin Code § 24.3(31). The City of Cedar Park falls squarely within this definition, and is subject to the Code's provisions.

Under the PUC's rules, a utility service may only be disconnected for specified reasons, none of which are applicable here. *See* 16 Tex. Admin Code § 24.167(a)(2). Rather, the PUC's rules specifically prohibit disconnection of utility service for "failure to comply with regulations or rules regarding anything other than the type of service being provided . . ." 16 Tex. Admin Code § 24.167(c)(7). The PUC's rules "relating to service and response to requests for service" are applicable to any municipality that does not adopt its own rules relating to service and response to requests for service, stating as follows:

> The commission's rules relating to service and response to requests for service will apply to utilities operating within the corporate limits of a municipality unless the municipality adopts its own rules. These rules include Subchapters F and G of this chapter 9rlelating to Customer Service and Protection and Quality of Service.

16 Tex. Admin Code § 24.377.

For example, Subchapter F § 24.167(b) lists instances where services may be disconnected with or without notice, and Subchapter F § 24.167(c) lists instances where disconnection of services is expressly prohibited. While the City has adopted some rules relating to service and

response to requests for service, including Section 18.01.007(a) which specifies instances where services may be disconnected with or without notice, the City has not adopted any rules which specify instances where disconnection of services is prohibited. The City cannot avoid compliance with all of the PUC rules relating to service and response to requests for service by adopting rules that address some, but not all of the matters addressed by those PUC rules; therefore, the default disconnection prohibitions outlined in Subchapter F § 24.167(c) should apply because the City chose not to adopt rules that address instances where disconnection is expressly prohibited. However, even if PUC provisions do not apply, the City Code provision cited by the City's notice letter to AusPro allows for termination of water and wastewater services only for violations of "applicable provisions of law." This language, although not an express prohibition, is certainly consistent with § 24.167(c)(7) (prohibiting disconnection of service for "failure to comply with regulations or rules regarding anything other than the type of service being provided ….") and therefore does not permit the City to terminate services for reasons unrelated to water and wastewater services.

It is undisputed that the City provided water and wastewater services to Plaintiffs' pursuant to the City's Chapter 18 Utilities Code, and it is further undisputed that the City terminated Plaintiffs' water and wastewater services for allegedly (a) operating a head shop in violation of the Chapter 11 Zoning Code, (b) not having a certificate of occupancy in violation of the Chapter 3 Building Regulations Code,[5] and (c) not having permits for outdoor signs in violation of the Chapter 13 Sign Regulation Code. Accordingly, Plaintiffs have a substantial likelihood of success on the merits of their claim that the City violated their rights to Due Process by terminating their

---

[5] The City argues that Plaintiffs are not entitled to water and wastewater services without a certificate of occupancy. Plaintiffs are aware of no Code provision requiring a certificate of occupancy before receiving these essential services, especially in light of the fact that the water and wastewater services also served a residential apartment on the Property.

water and sewer services without proper notice for alleged violation of laws that are not applicable or related to those services. This termination was in violation of the express prohibitions of the City's ordinances, the PUC rules and for reasons that are not amongst those listed in the PUC rules as permissible grounds for termination of water or wastewater services.

      **2.**      **The City failed to provide Plaintiffs with adequate notice of termination of water and wastewater services**

On January 27, 2022, the City terminated water services to the Property, which shut off water to the Retail Building and also the Residential Apartment. Approximately a week later, on February 5, 2022, the City terminated wastewater services to the Property, which also affected the Retail Building and the Residential Apartment. At no time prior to the termination of their water and wastewater services did any of the Plaintiffs know of the City's intention to do so. The City claims it provided adequate notice by allegedly mailing a notice of termination letter to AusPro on January 21, 2022. This letter was inadequate notice for several reasons.

The USPS online tracking information reflects that the notice letter did not arrive at the USPS Regional Facility until January 24, 2022, which refutes the City's claim that the notice was mailed on January 21, 2022. The City claims the certified mail receipts prove the letter was mailed on January 21, 2022, but those receipts merely have a handwritten date rather than the official USPS date-stamp. See Ex. F (APPX. 048-049). Finally, AusPro did not receive the notice of termination letter until February 23, 2022, almost a month after the water and wastewater services to the Property had already been shut off. Ex. B (APPX. 021-022).

In its initial Response to Plaintiffs' Application for Temporary Restraining Order, the City argued shamelessly that its obligation under Section 18.01.007(b) to provide at least five days' written notice of its intention to terminate water service is satisfied by simply dropping the notice in the mail at least five days before service is terminated, without regard or concern as to whether

or when the notice might be received. [Dkt. 7 at ¶¶ 29-31] The City did not acknowledge any significance to the fact that AusPro did not receive the notice letter until almost one month after the water and wastewater services were already shut off, other than to suggest that Plaintiffs could have "availed themselves of their appellate rights within the five days *after* they received the letter." [Dkt. 7 at ¶ 31] At that point, however, both the water and wastewater services had already been terminated. The City's conduct had resulted in excrement backing up into the Planet K Cedar Park, and the Residential Apartment was without service. Plaintiffs' rights to due process were already violated.

Further, based on the US Postal Service tracking information, the City either knew or should have known that Plaintiffs had not received notice of termination before it terminated services. The City obviously knows how to tract certified mail on the US Postal Service website, as evidenced by the tracking information it has filed with the Court. The City's interpretation of the Section 18.01.007(b) notice requirements, as well as its better-late-than-never indifference to the fact that notice was not received prior to the termination of the services, is perversely contrary to the sole, expressly stated purpose of the notice requirements, which is to provide the customer an opportunity to appeal the proposed termination of water service "*before* such termination occurs." Section 18.01.007(b)(3) (emphasis added). Section 18.01.007(b) does not state that notice is deemed given upon deposit in the mail. Although Section 18.01.007(b)(4) requires the customer to request an appeal within five days from the date the notice is mailed, this does not relieve the City of ensuring that the customer has an adequate opportunity to request an appeal "*before* such termination occurs," which the customer cannot do if the City does not ensure that notice is received before termination of the services.

The City also failed to provide notice of termination in compliance with PUC's rules, which require that a separate written statement be mailed or hand-delivered to a customer _before_ service may be disconnected, and also include what action must be taken by the customer to avoid disconnection. 16 Tex. Admin Code § 24.167(a)(1).

Prior to terminating water and wastewater services to the Property, the City did not comply with its own notice requirements, did not comply with the PUC notice requirements, and did not otherwise provide adequate notice of its intention to terminate those services. Accordingly, Plaintiffs have a substantial likelihood of success on the merits of their claim that the City violated their rights to Due Process by terminating their water and sewer services without providing adequate prior notice of its intention to do so, which deprived Plaintiffs the opportunity to be heard and protest the termination of these essential services to both the Retail Building and the Residential Apartment.

### B.    Irreparable Harm

"It is well settled that the expectation of utility services rises to the level of a 'legitimate claim of entitlement' encompassed in the category of property interests protected by the due process clause." _Mansfield Apartment Owners Ass'n v. City of Mansfield_, 988 F.2d 1469, 1474 (96th Cir. 1993). The termination of water and/or sewer services without affording proper notice constitutes irreparable harm. _See Olson v. Puckett_, No. 2:21-CV-1482-KJM-DMC, 2021 U.S. Dist. LEXIS 177707, at *27 (E.D. Cal. 2021) ("The continued deprivation of Olson's constitutionally protected property interest [in water service] in the absence of appropriate notice is an irreparable harm satisfying this element of the considerations for injunctive relief.").

Here, the City terminated water and sewer services without providing sufficient notice, and continues to deprive Plaintiffs of water and sewer service to this day.  The City failed to provide

notice of its intent to terminate water and wastewater services as required by its own code.  The City failed to notify Plaintiff that it was plugging the sewer line with an inflatable bladder, and later capping it. As explained by the U.S. Supreme Court, although a utility service may ultimately be restored, the cessation of essential services for any appreciable time works a uniquely final deprivation. *See Memphis Light*, 436 U.S. at 20.  Accordingly, the City's continued deprivation of essential water and sewer services constitutes irreparable injury for which Plaintiffs have no adequate remedy at law.

Even more, the belated notice provided a month after the water was shut off only vaguely referenced the customer's failure to meet the applicable provisions of law. The "applicable provisions of law" identified were those contained in the Notices of Violation, and have no connection to the water or sewer services provided as required under both the City's ordinances and Texas law. Under these circumstances, Plaintiffs were afforded no opportunity to contest the invalid grounds for termination of water and sewer services before they were terminated, and the continued deprivation of those services constitutes irreparable injury warranting the issuance of an injunction. The City also violated the PUC regulations in terminating water and sewer services, which are designed to protect against this very type of harm.

Finally, after the City terminated water and wastewater services to the Property, Plaintiffs brought in containers of water for drinking, the lavatory, the toilet, and the residential tenant, and even put a Porta Potty out back behind the Retail Building, and they continue to do so to this day. But the City has now declared the conditions on the Property to be unsanitary and in violation of the City's Code and state law because the plumbing fixtures are not connected to water or wastewater services, both of which the City disconnected illegally. The City has even gone so far as to file charges against Kleinman and AusPro for not having a working toilet, working water

closet, working lavatory, working drinking fountain, working service sink, properly maintained plumbing fixtures, or sanitary toilet accommodations. Each of these alleged violations is a direct result of the City's wrongful, illegal, and unconstitutional termination of water and wastewater services to the Property, and constitute irreparable harm. Despite the City's assertion that the cessation of water and wastewater services results in unsafe and unsanitary conditions, the City refuses to restore those services.

### C.    Threatened Injury Outweighs any Harm

The third element to obtain a preliminary injunction requires Plaintiffs to show that, absent preliminary injunctive relief, its threatened injury outweighs any harm the City would suffer as a result of the injunction. Because Plaintiffs have established irreparable harm, there would have to be powerful evidence of harm to the City's interests to prevent Plaintiffs from meeting this element. *See Opulent Life Church v. City of Holly Springs Miss.*, 697 F.3d 279, 297 (5th Cir. 2012) (explaining that because the court "just concluded that [plaintiff's] harm is irreparable . . . [defendant] would need to present powerful evidence of harm to its interest to prevent [plaintiff] from meeting this requirement."). Further, "[w]hen a constitutional right hangs in the balance . . . 'even a temporary loss' usually trumps any harm to the defendant." *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 806 (10th Cir. 2019). Here, if the Court grants the injunctive relief, the City would simply be required to restore the water and wastewater services that it improperly terminated.  Not only would such a remedy not harm the City, but it would serve to correct the barrage of items delineated in the City's most recent complaints resulting from the absence of water and sewer services. And the City would be compensated for the water and wastewater services provided. Conversely, the City's termination of essential utility services

without proper notice constitutes a deprivation of Plaintiffs' property interests without due process of law.  The balance of equities tips strongly in Plaintiffs' favor.

        **D.**        **Injunction will not Disserve Public Interests**

Finally, the restoration of essential utility services during the pendency of these proceedings will not disserve public interest. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Verlo v. Martinez*, 820 F.3d 1113, 1127 (10th Cir. 2016). The U.S. Supreme Court has held that parties have a vested property right in essential utility services, requiring some notice prior to termination to afford reasonable assurance against erroneous or arbitrary withholdings of essential services. *Memphis Light*, 436 U.S. at 14-15. Restoring essential utility services that were deprived without due process with not disserve public interest.

And again, as previously noted, restoring water and wastewater services to the Property will alleviate the complaints that Plaintiffs (1) failed  "to provide employees, customers, patrons and visitors with required minimum public and employee toilet facilities," (2) failed "to provide and maintain sanitary toilet accommodations at a public building," (3) failed "to provide the minimum number and type of plumbing fixtures based on actual use of the building and space, to wit: mercantile occupancy," and (4) failed "to maintain existing plumbing fixtures in proper operating conditions." Ex. E (APPX. 031-047). Accordingly, entry of an injunction requiring the City to restore water and sewer services during the pendency of this litigation will not disserve public interests.

**BOND**

Plaintiffs are ready, willing and able to post a bond in the amount deemed appropriate by the Court. Plaintiffs request a preliminary injunction requiring the City restore water and

wastewater services to the Property. The City charges a refundable $100 deposit on residential

property (waived if an acceptable letter of credit is provided) and a utility deposit based on meter

size for commercial property. *See* [https://www.cedarparktexas.gov/departments/water-utility-billing](https://www.cedarparktexas.gov/departments/water-utility-billing). In this case, the purpose of the bond would be for payment of costs and damages sustained

if it is later determined the City was wrongfully required to restore water and wastewater services.

Based on the deposit required by the City to obtain those services, and the fact that the City will

suffer no injury in being required to provide these essential services to Plaintiffs, the bond should

be a nominal amount.

## PRAYER

Plaintiffs request that this Court issue a preliminary injunction, immediately requiring the

City to restore water and wastewater services to the Property and for such other legal and equitable

relief to which Plaintiffs are entitled or the Court may deem just, proper, and equitable.

Respectfully submitted,

SPROUSE SHRADER SMITH PLLC
Jeffrey G. Henry
State Bar No. 09479440
Email: *jeff.henry@sprouselaw.com*
805 Las Cimas Parkway, Suite 350
Austin, Texas 78746
Telephone: (512) 615-6650
Facsimile: (512) 382-6644

And

SPROUSE SHRADER SMITH PLLC

/s/ *Tim Williams*
Tim Williams
State Bar No. 24067940
Email: *tim.williams@sprouselaw.com*
701 S. Taylor Street, Suite 500 (79101)
P.O. Box 15008
Amarillo, Texas   79105-5008

Telephone: (806) 468-3300
Facsimile: (806) 373-3454

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of July, 2022, a true and correct copy of the foregoing pleading was served in accordance with the Federal Rules of Civil Procedure on the following Counsel for the Defendant City of Cedar Park:

Scott M. Tschirhart
smtschirhart@rampagelaw.com
Roxana I. Perez Stevens
ristevens@rampagelaw.com
DENTON NAVARRO ROCHA BERNAL & ZECH, P.C.
2500 W. William Cannon Drive, Suite 609
Austin, Texas 78745

/s/ *Tim Williams*
Tim Williams