**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **MICHAEL KLEINMAN,** | § | |
| **MMK HOLDINGS, LP and** | § | |
| **AUSPRO ENTERPRISES, LP** | § | |
| | § | |
| **Plaintiffs,** | § | |
| **v.** | § | **CIVIL ACTION NO. 1:22-cv-00527-LY** |
| | § | |
| **CITY OF CEDAR PARK** | § | |
| | § | |
| **Defendant.** | § | |

---

**DEFENDANT'S MOTION TO DISMISS**
**PLAINITFFS' FIRST AMENDED COMPLAINT AND REQUEST FOR**
**DECLARATORY AND INJUNCTIVE RELIEF [Dkt. 11]**

---

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Defendant CITY OF CEDAR PARK ("City") and files this Motion to Dismiss *Plaintiff's First Amended Complaint and Request for Declaratory and Injunctive Relief* [Dkt. 11] pursuant to Federal Rule of Civil Procedure 12(b)(1) and would respectfully show the Court as follows.

**I.**
**FACTUAL BACKGROUND**

**Fraudulent Utility Application.**

1.      On or about November 7, 2021, AusPro Enterprises submitted a fraudulent Commercial Utility Service Application to the City requesting connection of water services for 1511 North Bell, Cedar Park, Tx 78613.  *See Affidavit of Jo Ann Perez*, a true and correct copy of which is attached as Exhibit "A."  A true and correct copy of the on-line application is attached as Exhibit

"A1." Plaintiffs listed their mailing address as "PO Box 13549, Austin, Texas 78711." *See* Exhibit "A1."

2.      In the Commercial Utility Service Application, Plaintiffs affirmatively and fraudulently represented to the City:

> **[×] I have already applied for a certificate of occupancy with Building Inspections.**

*See* Exhibit "A1."  However, Plaintiffs did not apply for a certificate of occupancy.  Plaintiffs represented to this Court that their failure to apply for a certificate of occupancy was intentional. [Dkt. 11, ¶ 32 ("AusPro did not apply for a certificate of occupancy for the Retail Building believing one was not needed . . .")].

3.      The City of Cedar Park requires a certificate of occupancy for every change in the use or occupancy of commercial property in the City:

> § 3.02.006 Certificate of occupancy; change in use; temporary certificate of occupancy.
>
> (a)  Change in use.  No change in the use or occupancy of any land or any change of use or occupancy in an existing building other than for single-family dwelling purposes, shall be made nor shall any new building be occupied until a temporary or permanent certificate of occupancy has been issued by the Building Official in compliance with the Chapter 3 of this Code.
>
> (b)  Temporary certificate of occupancy.  Pending the issuance of a permanent certificate of occupancy, during the completion of alterations or during partial occupancy of a building pending its completion, a temporary certificate of occupancy may be issued by the Building Official for a period not exceeding 30 days when accompanied by fiscal surety. Such temporary certificates shall not be construed as in any way altering the respective rights, duties, or obligations of the owners or of the City relating to the use or occupancy of the premises or any other matter covered by this Code.
>
> (c)  Penalty.  Any person who shall violate any provision of this Article shall be deemed guilty of a misdemeanor and upon conviction, shall be fined in

accordance with the general penalty provision found in section 1.01.009 of this Code. Each day of violation shall constitute a separate offense.

Ordinance CO02-17-11-09-H1 adopted 11/9/17/City Code § 3.02.006, a certified copy of which is attached as Exhibit "B" and incorporated herein as if set forth fully. Published at https://ecode360.com/38594368 last visited July 14, 2022, 9:25 A.M. CST.

4.      Plaintiffs changed the use of the property from what had been a florist shop to a Planet K head shop.  [Dkt. 11, ¶ 32].  Plaintiffs also changed the occupancy by changing ownership from the previous unidentified owner to Auspro.  [Dkt. 11, ¶ 27].  Either of these changes requires a new certificate of occupancy. *See* Ordinance CO02-17-11-09-H1/City Code § 3.02.006.  *See also* Exhibit "A."  The City would not have approved the application or connected the water and sewer service if the City had known that Plaintiffs had not actually applied for a certificate of occupancy. *See* Exhibit "A."

5.      On information and belief, Plaintiffs failed to obtain a certificate of occupancy because they knew that it is common knowledge that Planet K establishments are "head shops"[1] and they feared that they would be unable to obtain a certificate of occupancy as the City's Zoning Ordinance expressly prohibits head shops. [Dkt. 11, ¶¶ 18-20].

6.      Plaintiffs have been cited in the Cedar Park municipal Court for failure to obtain a certificate of occupancy in violation of Ordinance CO02-17-11-09-H1/City Code § 3.02.006. [Dkt. 11, ¶ 39-40; Dkt. 21, pg. 6, ¶12].    This prosecution is ongoing.

---

[1] https://findsmokeshop.com/texas/austin/planet-k ("Planet K is a head shop in Austin, Texas."); http://austin.headshops.us/Texas/Planet-K/ ; https://www.yelp.com/biz/planet-k-new-braunfels ; http://austin.headshops.us/texas/Planet-K-North/ ; https://findvapeshop.com/texas/austin/planet-k ("Planet K is a head shop in Austin, Texas.")  Websites last visited on July 13, 2022, at 9:32 A.M. CST.

7.      Plaintiffs also affirmatively and fraudulently listed the primary use of the property as "unknown at this time."  *See* Exhibit "A1."  Plaintiffs' allegations about their businesses and the acquisition of the property in Cedar Park in September of 2021 indicate that Plaintiffs knew that they intended to operate a Planet K at this location.  [Dkt.1, ¶¶ 23-27; Dkt. 11, ¶¶, 1, 2, 23-27; Dkt. 20, p. 4 of 22; Dkt. 21, pg.4, ¶¶1-2].  Plaintiffs' representation that they did not know the primary use for the property is false.

8.      The City would not have approved Plaintiffs' Commercial Utility Service Application if the City had known that Plaintiff intended to open a head shop or any other use that was prohibited by the City's Zoning Ordinance.  *See* Exhibit "A."

9.      On information and belief, Plaintiffs did not tell the City that the primary use of the property would be to open a Planet K because they knew that the City would not approve their application as head shops are prohibited under the City's Zoning Ordinance.

**Separate Residential Building.**

10.     Plaintiffs represent that they also bought a separate residential building when they bought the property.  [Dkt. 11, ¶¶ 29-30; Dkt. 20, pg. 5].  However, Plaintiffs did not apply for water and sewer service for the separate residential building.  *See* Exhibit "A."  Plaintiffs claim that the business and the residential building shared the same water and sewer connection.  [Dkt. 11, ¶ 31; Dkt. 20, pg. 5].

11.     The City Code requires every separate building or structure to have its own separate water and sewer service.

§ 18.01.005 Connection to system.

(a) Generally.  With the exception of those premises using water sources other than the city's water system as of the effective date of this section, all premises within the city shall hereafter be connected to the water system of the city for

the purpose of all household uses and other uses intended for human consumption.

(b) Connection to meters.  Connection to meters shall be the responsibility of the user but shall be made only under the supervision of authorized personnel of the city. Water service customers shall install a cut-off valve outside their meter box on the underside thereof. Yard lines connected to meters shall not cross into private property or private easements not owned by the customer.

(c) Separate meter required.  **Every building, structure or consumer in the city shall have a separate water meter**; however, this provision may be waived for good cause upon written application by the water service customer, subject to approval by the City Manager.
. . . .

Ordinance   O2000-18/City   Code   §   18.01.005   adopted   3/23/00,   published   at https://ecode360.com/38594368  last visited July 13, 2022, 10:58 A.M. CST. (emphasis added).

12.      Plaintiffs have not submitted a written application for both buildings to be served by the same water meter, and the City Manager has not approved any such request from Plaintiffs.  *See* Exhibit "A."   The City would not have approved Plaintiffs' Commercial Utility Service Application if the City had known that the proposed water service would have served both the commercial building and the separate residential structure. *See* Exhibit "A."

13.      Although Plaintiffs allege that there were tenants in the separate residential structure, those alleged tenants are not parties to this lawsuit.

**Plaintiffs illegally open the Planet K.**

14.      Plaintiffs claim that around Thanksgiving 2021, they opened the Planet K in Cedar Park. [Dkt. 11, ¶ 34; Dkt. 21, pg. 5, ¶ 6].  Plaintiffs did not have a certificate of occupancy, so operating the business was and is in violation of Ordinance CO02-17-11-09-H1/City Code § 3.02.006.

**The City's Inspection.**

15.     On or about December 3, 2021, a City Code Compliance Officer conducted a routine inspection of the property and noted that the business was in violation of the City's zoning ordinances.   [Dkt.11, ¶36; Dkt.21, pg.5, ¶7].   Further investigation showed that Plaintiffs were operating the Planet K without a certificate of occupancy.  The City issued a Notice of Violation to Plaintiff Kleinman.  [Dkt. 11, ¶ 36; Dkt. 21, pg. 6, ¶7; Dkt. 21, pp. 10-11].

16.     On or about December 17, 2021, the City issued another Notice of Violation alleging that Plaintiffs were operating an illegal head shop, that Plaintiffs failed to obtain a certificate of occupancy, and that Plaintiffs were displaying signs without proper permits.  [Dkt. 11, ¶ 37; Dkt. 21, pp. 5-6, ¶10; Dkt. 21, pp. 14-17].

**Pending municipal prosecution.**

17.     When Plaintiffs did not respond to the City's Notices of Violation, the City began issuing citations.  [Dkt. 11, ¶¶ 38-40; Dkt. 21, pg. 6, ¶¶11-12].  These criminal prosecutions are ongoing.

**Disconnecting water and sewer services.**

18.     The City Code provides a list of enumerated reasons for disconnecting water and sewer services.

> § 18.01.007 Termination of water service.
>
> (a)  Reasons for termination enumerated. The City shall have the right to disconnect or refuse to connect or reconnect any water and/or wastewater service connection for the following reasons:
>
> > (1) Failure of the water or wastewater service customer to meet the applicable provisions of law;
> > (2) Violation by water or wastewater service customer of the rules and regulations pertaining to such service;
> > . . . .

Ordinance CO52-16-09-08-E1adopted 9/8/16/City Code § 18.01.007(a) a certified copy of which is attached as Exhibit "C" published at  https://ecode360.com/38628996  last visited July 14, 2022, 10:21 A.M. CST.

19.     Through this ordinance, the City has adopted its own rules regarding services inside the City corporate limits. [Dkt. 21, pg.58]; 16 TAC §24.377 ("The commission's rules relating to service and response to requests for service will apply to utilities operating within the corporate limits of a municipality **unless the municipality adopts its own rules**.") (emphasis added).  The City has adopted its own rules, therefore, the relevant City Code sections are applicable and the City may enforce its own rules.

20.     Plaintiffs have not met the applicable provisions of law because they have not applied for and do not have a certificate of occupancy which is required by Ordinance CO02-17-11-09-H1/City Code § 3.02.006.  Additionally, Plaintiffs have been cited for violations of City Code Sections 11.01.032 and Sec. 11.02.064 [Use prohibited in zoning district (head shop)]; Section 13.05.002(14) [Prohibited roof sign]; Section 13.05.002(11) [Prohibited pole sign]; 13.03.02.04 [Unpermitted wall sign].  [Dkt. 11, ¶¶39-40].

21.     Although not cited, Plaintiffs were also in violation of the water and wastewater ordinances because the water supply was shared by two different buildings which violates Ordinance O2000-18/City Code Section 18.01.005(c).  Plaintiffs are responsible for the connection to the meter(s) under Ordinance O2000-18/City Code Section 18.01.005(b).

22.     Because Plaintiffs were in violation of a number of City Ordinances, termination of water and wastewater services was authorized by the City Code.

**The City provided notice.**

23.     The City Code also provides that notice must be mailed prior to termination of service.

(b) Termination notice.  Except for circumstances requiring immediate action to protect, life or property, termination of service shall not take place prior to the giving of at least five (5) days notice to the customer by mail of the intention of the City to so terminate. Said notice shall:

(1)  Be sent by mail to the last known billing address of the customer;
(2)  State the reason for the proposed termination;
(3)  State the customer's right to a hearing before such termination occurs; and
(4)  State that the customer who desires a hearing must request a hearing by contacting the City Manager at a stated telephone number or in person before the expiration of five (5) days from the date of mailing.

Ordinance CO52-16-09-08-E1/City Code § 18.01.007(b); Exhibit "C."

24.     On January 21, 2022, the City sent notice to Plaintiffs via Certified Mail.  *See Affidavit of Dyanne Hargrove* a true and correct copy of which is attached as Exhibit "D" along with attached Exhibits E1 (the letter) and D2 (the Certified Mail Receipt); [Dkt. 21, pp. 20-22].

25.     The letter was sent to Michael Kleinman, AusPro Enterprises, LP, P.O. Box 13549, Austin, Texas 78711-3549.  [Dkt. 21, pp. 20-22]; Exhibit E1.  This is the same address that Auspro gave the City in Plaintiffs' Commercial Utility Service Application as its mailing address.  *See* Exhibit "A." This was the last known billing address of the customer.[2]

26.     The letter stated the reasons for termination of water and wastewater services:

Auspro Enterprises, LP is currently operating its business at the Property in violation of the City of Cedar Park Code of Ordinances, specifically, Sections 3.02.006, 11.01.032, 11.02.064, 13.03.03.04, 13.05.002(11), and 13.05.002(14).

Exhibit E1.

27.     The letter gave Plaintiffs six (6) days notice instead of the five (5) days anticipated by Cedar Park Code of Ordinances Section 18.01.007. *See* Exhibits D, D1, and D2. Plaintiffs were

---

[2] This was also the address to which the City sent the Notices of Violations. [Dkt. 21, pp. 10-11 and 14-17].

advised that water and wastewater service to the Property would be terminated at 5:00 pm on Thursday, January 27, 2022.  *See* Exhibit D1.

28.     Finally, the letter advised Plaintiffs of their appellate rights:

> Cedar Park Code of Ordinances Section 18.01.007 affords Auspro Enterprises, LP an opportunity for a hearing before the City Manager prior to the expiration of the five (5) days from the date of mailing of this notice. If you would like to schedule a hearing with the City Manager, please do so prior to 5:00 pm on January 27, 2022, by contacting City Management Executive Assistant, Joscelyn Voegeli at (512) 401-5010, or in person at 450 Cypress Creek Rd. Building 1, Cedar Park, Texas 78613.

Exhibit D1.  Therefore, the City complied with all of the notice requirements contained in Ordinance CO52-16-09-08-E1/City Code § 18.01.007(b).

29.     Plaintiffs argue that they did not receive the City's notice letter until February 23, 2022. However, Plaintiffs admit that the United States Postal Service Regional Facility in Austin, Texas received the letter on January 24, 2022.  Therefore, it appears that the letter was available to Plaintiffs at the Austin Post Office facilities.  [Dkt. 21, pg. 24].  Plaintiffs do not say why they did not retrieve the letter from their post office box.  Eventually it appears that after a month the post office sent the letter to Cedar Park to be delivered to Plaintiffs' business address.  [Dkt. 21, pg. 24].

**The City terminated water and sewer service.**

30.     On January 27, 2022, at 5:00 P.M. the City terminated water and sewer service to the property.  *See Affidavit of Matt Brosig*, a true and correct copy of which is attached as Exhibit "E."  The City cut off the water and pugged the sewer line.  *See* Exhibit "E."

**The sewer line was illegally re-opened.**

31.     On February 7, 2022, the City checked sewer line and found that the plug in the lateral line clean out had been removed.  *See* Exhibit "E."  A police report was filed, and the sewer line was

again plugged while the police were present.  *See* Exhibit "E."  On February 10, 2022, the City

exposed the lateral line, plugged and capped it, and backfilled over the work with road base.  *See*

Exhibit "E."  [Dkt. 11, ¶

**Plaintiffs sought an injunction in state court.**

32.    On January 28, 2022, Plaintiffs filed suit against the City in Williamson County, case styled

*Auspor Enterprises, LP v. City of Cedar Park*, Case No. 22-0135-C395 (395th Judicial District,

Williamson County, Texas) alleging the City pulled the water meter at its premises and terminated

the building's water supply.  A true and correct copy of Plaintiff's Petition is attached as Exhibit

"F."  Plaintiffs unsuccessfully sought a temporary restraining order from the State District Court,

much the same as Plaintiffs seek from this Court.  On January 31, 2022, Plaintiffs voluntarily

nonsuited.  A true and correct copy of the Notice of Nonsuit is attached as Exhibit "G."

**City enforcement actions against other businesses.**

33.    Prior to Plaintiffs filing this suit, in May of 2022, the City inspected thirteen (13) other

businesses that could have been operating as prohibited head shops.  *See Affidavit of Kevin Elliott*,

a true and correct copy of which is attached as Exhibit "H"; *see also* Exhibit "H1" which is a list

of the other businesses and notations on the inspections.

34.    Unlike Plaintiffs, all of these businesses were operating under a valid certificate of

occupancy.  *See* Exhibit "H."  Of the thirteen, only four (4) were operating as prohibited head

shops.  *See* Exhibit "H."  These four businesses were provided with Notices of Violation and, as

of July 5, 2022, every one of these businesses has come into compliance and is no longer in

violation of City's Zoning Ordinance prohibition against head shops.  *See* Exhibit "H."

35.    Following up on the initial inspection, the City obtained a warrant and served said warrant

on May 11, 2022.  *See* Exhibit "H"; *see also* Exhibit "H2" which is a true and correct copy of and

Inspection Summary including a narrative of the findings (which include additional City Code violations) and photographs of bongs, pipes and other drug paraphernalia.   The sale of these items makes the business a prohibited "head shop" under the City Code.   *See* Exhibit "H2."

**Plaintiff's present suit.**

36.      On May 31, 2022, more than four (4) months after the City terminated water and sewer service, Plaintiff brought the present suit.

37.      On June 1, 2022, Plaintiffs filed *Plaintiffs' Application for Temporary Restraining Order*. [Dkt.2].  Plaintiffs seek to have this Court order the City to restore water services to the Property.

38.      On June 29, 2022, Plaintiffs filed a *First Amended Complaint and Request for Declaratory and Injunctive Relief*.  [Dkt. 11].  This is Plaintiffs' live pleading in this matter.

39.      For the following reasons, the Court should dismiss *Plaintiff's First Amended Complaint and Request for Declaratory and Injunctive Relief* [Dkt.11] in its entirety.

## II.
## ARGUMENTS AND AUTHORITIES

**Standard for 12(b)(1) Motion**

40.      A party's motion to dismiss for lack of subject-matter jurisdiction is properly made pursuant to Federal Rule of Civil Procedure 12(b)(1). A claim must be dismissed for lack of subject-matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Judicial analysis starts with the presumption that a federal court lacks subject-matter jurisdiction, and the burden of overcoming this presumption rests on the party claiming jurisdiction. *See Kokkonen v. Guardian Life Ins.*, 511 U.S. 375, 377 (1994).  Here, the City presents a "factual attack" that challenges the existence of subject matter jurisdiction and matters outside

the pleadings may be considered. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) ("[A] 'factual attack' under Rule 12(b)(1) may occur at any stage of the proceedings, and plaintiff bears the burden of proof that jurisdiction does in fact exist.").

> If it is a factual attack, as is the case here, the Court may consider any evidence (affidavits, testimony, documents, etc.) submitted by the parties that is relevant to the issue of jurisdiction. *Id.*, citing *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989). A defendant making a factual attack on a complaint may provide supporting affidavits, testimony or other admissible evidence. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). The plaintiff, to satisfy its burden of proof, may also submit evidence to show by a preponderance of the evidence that subject matter jurisdiction exists. *Id.* The court's consideration of such matters outside the pleadings does not convert the motion to one for summary judgment under Rule 56(c). *Robinson v. Paulson*, H–06–4083, 2008 WL 4692392 at *10 (S.D. Tex. Oct. 28, 2008), citing *Garcia*, 104 F.3d at 1261. "Unlike in a facial attack where jurisdiction is determined upon the basis of allegations of the complaint, accepted as true[,] when a factual attack is made upon federal jurisdiction, no presumption of truthfulness attaches to the plaintiffs' jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In a factual attack, the plaintiffs have the burden of proving that federal jurisdiction does in fact exist." *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981). In resolving a factual attack on subject matter jurisdiction under Rule 12(b) (1), the district court, which does not address the merits of the suit, has significant authority " 'to weigh the evidence and satisfy itself as to the existence of its power to hear the case.' " *Robinson v. Paulson*, No. H-06-4083, 2008 WL 4692392, *10 (S.D. Tex. Oct. 22, 2008), quoting *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997), and citing *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986).

*Residents Against Flooding v. Reinvestment Zone No. Seventeen, City of Houston, Texas*, 260 F. Supp. 3d 738, 754–55 (S.D. Tex. 2017), *aff'd sub nom. Residents Against Flooding v. Reinvestment Zone No. Seventeen*, 734 F. App'x 916 (5th Cir. 2018).

**Motion to Dismiss.**

41.    Plaintiffs' claims should be dismissed for lack of subject-matter jurisdiction (Rule 12(b)(1)).

**The Younger abstention doctrine bars Plaintiffs' Claims.**

42.     Plaintiffs' claims are barred by the *Younger* doctrine.  *See Younger v. Harris*, 401 U.S. 37,

91 S.Ct. 746, 27 L.Ed.2d 669 (1971).   The *Younger* doctrine requires federal courts to abstain

where: (1) the dispute involves an "ongoing state judicial proceeding," (2) an important state

interest in the subject matter of the proceeding must be implicated, and (3) the state proceedings

must afford an adequate opportunity to raise constitutional challenges. *Wightman v. Tex. Supreme*

*Ct.*, 84 F.3d 188, 189 (5th Cir. 1996).

> *Younger* dictates that a federal court cannot enjoin a pending criminal trial in state
> court, absent exceedingly rare and extraordinary circumstances. This doctrine is
> based upon concerns of judicial economy and proper state-federal relations. In a
> companion case to *Younger,* the Supreme Court held that federalism principles also
> bar a federal court from issuing declaratory relief when there is a pending state
> criminal proceeding. *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d
> 688 (1971).

*Ballard v. Wilson*, 856 F.2d 1568, 1569–70 (5th Cir. 1988) (applying the *Younger* abstention to a

municipal criminal prosecution for numerous parking ticket violations.).

43.     Here, the three prongs are met, and abstention is proper. The first prong is satisfied because

Plaintiffs' Complaint repeatedly states that Plaintiffs have been cited and are involved in ongoing

municipal prosecutions based on City ordinances.

44.   The second prong is satisfied because it is well-established that for abstention purposes, the

enforcement and application of zoning ordinances and land use regulations is an important state

and local interest.  *See Huffman*, 420 U.S. at 595–605, 95 S.Ct. 1200 (civil enforcement of nuisance

law); *Koerner v. Garden Dist. Ass'n*, 78 F. App'x 960, 963–64 (5th Cir. 2003)("local land use and

zoning [are] areas where local interest and coherent policy are necessary. . . [and] federal courts

should not leave their indelible print on local and state land use and zoning law by entertaining

these cases . . ."); *Sinclair Oil Corp. v. County of Santa Barbara*, 96 F.3d 401, 409 (9th Cir.1996) *cert. denied*, 523 U.S. 1059, 118 S.Ct. 1386, 140 L.Ed.2d 646 (1998) ("land use planning is a sensitive area of social policy" which federal courts typically ought not enter); *Pomponio v. Fauquier County Bd. of Supervisors*, 21 F.3d 1319, 1327 (4th Cir.1994) (en banc) ("[S]tate and local zoning and land use law is particularly the province of the State and ... federal courts should be wary of intervening in that area in the ordinary case ... [because] [w]e can conceive of few matters of public concern more substantial than zoning and land use laws"); *Izzo v. Borough of River Edge*, 843 F.2d 765, 769 (3d Cir.1988) ("We share ... the federal judiciary's traditional respect for local administration and control of land use regulation. Federal courts have expressly disavowed any desire to sit as a statewide board of zoning appeals hearing challenges to municipalities.... Land use policy customarily has been considered ... an area in which the tenets of federalism are particularly strong.").

45.     For the third prong of the test, to overcome the presumption in favor of abstention, Plaintiffs must show that they had no opportunity to litigate the federal issue in state court. *See DeSpain v. Johnston*, 731 F.2d 1171, 1178 (5th Cir. 1984). As a matter of law, "Texas law is apparently as accommodating as the federal forum. . . .[A]bstention is appropriate unless state law clearly bars the interposition of the constitutional claims." *Moore v. Sims*, 442 U.S. 415, 425–26, 99 S. Ct. 2371, 2378–79, 60 L. Ed. 2d 994 (1979). Here, Plaintiffs have a full opportunity to raise their constitutional challenges in a Texas state court. *See DeSpain*, at 1176; *see also Kugler v. Helfant*, 421 U.S. 117, 124 (1975). Specifically, Plaintiffs had and have the opportunity to present their constitutional challenges in the municipal court.

46.     In implementing the *Younger* policy of non-interference, federal courts must focus upon the practical impact of any potential ruling. *See Ballard v. Wilson*, 856 F.2d 1568, 1570 (5th

Cir.1988). Accordingly, the Fifth Circuit has stated that "we cannot ignore the fact that any injunction or declaratory judgment issued by a federal court would affect the course and outcome of the pending state proceedings." *Id.* at 1570.  In the present case, any injunction or declaratory judgment issued by this Court would necessarily affect the course and outcome of the pending state proceedings. "[A]nd a declaratory judgment as to the constitutionality of the ordinance would actually resolve an issue central to the pending state proceedings." *Ballard*, 856 F.2d at 1570. This case meets each element of the *Younger* analysis, and as a result, this Court is required to abstain from entertaining Plaintiffs' claims.

**Plaintiffs do not have a valid equal protection claim.**

47.     Plaintiffs base their equal protection claim on the erroneous representation that the City is not enforcing the prohibition against Head Shops against other businesses that are selling the same products. [Dkt. 11, ¶¶ 64-73, 78].  However, the City has been enforcing this zoning restriction on other businesses that sell the same prohibited Head Shop items and as of July 5, 2022, all businesses, including the businesses cited by Plaintiff, have come into compliance with this provision of the City's zoning ordinance.  *See* Exhibit "H."  Since Plaintiffs cannot demonstrate that they are being singled out for enforcement, Plaintiffs' equal protection argument should be dismissed as a matter of law.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Defendant, the City of Cedar Park, respectfully requests that the Court grant Defendant's Motion to Dismiss and dismiss Plaintiffs' claims in their entirety, and for such other and further relief, in law and equity, to which the City may show itself justly entitled.

Respectfully submitted,

**Denton Navarro Rocha Bernal & Zech, P.C.**
attorneys & counselors at law • rampagelaw.com
A Professional Corporation
2500 W. William Cannon Drive, Suite 609
Austin, Texas 78745
512/279-6431
512/279-6438 (Facsimile)
smtschirhart@rampagelaw.com
ristevens@rampagelaw.com


By: _____
SCOTT M. TSCHIRHART
State Bar No. 24013655
ROXANA I. PEREZ STEVENS
State Bar No. 24037264

*Attorneys for Defendant*
*City of Cedar Park*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served in accordance with the Federal Rules of Civil Procedure on this 18th day of July 2022, to the following:

Jeffrey G. Henry                                    **E-FILE NOTIFICATION**
SPROUSE SHRADER SMITH PLLC
805 Las Cimas Parkway, Suite 350
Austin, Texas 78746

Tim Williams                                        **E-FILE NOTIFICATION**
SPROUSE SHRADER SMITH PLLC
P.O. Box 15008
Amarillo, Texas 79105

_____
SCOTT M. TSCHIRHART