UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MICHAEL KLEINMAN, MMK | § | No. 1:22-cv-527-DAE |
| HOLDINGS, LP, and AUSPRO | § | |
| ENTERPRISES, LP, | § | |
|     *Plaintiffs*, | § | |
| | § | |
| vs. | § | |
| | § | |
| CITY OF CEDAR PARK, | § | |
|     *Defendant*. | § | |

<u>ORDER ON SUMMARY JUDGMENT</u>

Before the Court is (1) Plaintiffs Michael Kleinman, MMK Holdings, LP, and AusPro Enterprises, LP's (collectively "Plaintiffs") Corrected Motion for Partial Summary Judgment, filed on June 18, 2024 (Dkt. # 74); (2) Plaintiffs' Supplemental Motion for Summary Judgment, filed on August 16, 2024 (Dkt. # 94); and (3) Defendant City of Cedar Park's ("Defendant") Motion for Summary Judgment, filed on August 16, 2024.  (Dkt. # 95.)

On July 2, 2024, Defendant filed its response to Plaintiffs' Corrected Motion for Partial Summary Judgment (Dkt. # 80), and on September 6, 2024, filed its response to the Supplemental Motion.  (Dkt. # 105.)  On July 9, 2024, and September 13, 2024, Plaintiffs filed their replies in support of each motion.  (Dkts. ## 83, 107.)  On August 30, 2024, Plaintiffs filed their response in opposition to Defendant's Motion for Summary Judgment.  (Dkt. # 101.)  On September 6, 2024,

1

Defendant filed its reply in support of its Motion for Summary Judgment. (Dkt. # 106.) On February 21, 2025, Plaintiffs submitted a Supplemental Authority to the Court, in support of their pending Supplemental Motion for Summary Judgment. (Dkt. # 113.)

The Court finds this matter suitable for disposition without a hearing. After careful consideration of the filings and relevant case law, the Court, for the following reasons, **DENIES** Plaintiffs' Corrected Motion for Partial Summary Judgment, **DENIES** Plaintiffs' Supplemental Motion for Summary Judgment, and **GRANTS** Defendant's Motion for Summary Judgment.

<u>BACKGROUND</u>

This lawsuit involves a dispute over the City of Cedar Park's (the "City") Ordinance banning "head shops" and subsequent municipal actions taken against Plaintiffs. Michael Kleinman, through his limited partnerships, including AusPro Enterprises LP and MMK Holdings LP, operates Planet K stores in several cities in Texas, including a location within the City.

In 2017, Cedar Park banned "head shops" in all zoning districts under Cedar Park Ordinance § 11.02.064, which are defined under § 11.09.001 as follows: "Any retail establishment open to the public that presents, displays, or offers for sale paraphernalia, items, equipment or products commonly used, intended to be used, or commonly known to be used, for the ingestion, inhalation,

preparation, or injection or illegal substances, to include any device which has been fabricated, constructed, altered, adjusted, or marked especially for use in the smoking or ingestion of a controlled substance, notwithstanding that it might also be possible to use the device for some other purpose." (Dkt. # 74 at 2.)  Operation of a head shop in a zoning district is a Class C Misdemeanor punishable by fine up to $2,000.00.  (Id. at 3.)

In 2019, the Texas legislature legalized growing, selling, and smoking hemp.  Tex. Agric. Code §§ 121.001–122.404.  However, Texas law excludes manufacturing and distributing smokable hemp.  25 Tex. Admin. Code § 300.104. Retailers may sell smokable hemp, but it must be supplied from outside Texas.  See 25 Tex. Admin. Code § 300.403.  Texas's Health and Safety Code provides in relevant part: "A municipality, county, or other political subdivision of this state may not enact, adopt, or enforce a rule, ordinance, order, resolution, or other regulation that prohibits the processing of hemp or the manufacturing or sale of a consumable hemp product as authorized by this chapter."  Tex. Health & Safety Code § 443.003.  "Consumable hemp product" is further defined as: "[A] food, a drug, a device, or a cosmetic, as those terms are defined by Section 431.002, that contains hemp or one or more hemp-derived cannabinoids, including cannabidiol. Tex. Health & Safety Code § 443.001.  "Device" is defined in relevant part as: "[A]n instrument, apparatus, implement, machine, contrivance, implant, in vitro

3

reagent, or other similar or related article, including any component, part, or accessory, that is: . . . (B) intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease in man or other animals.  Tex. Health & Safety Code § 431.002.

Plaintiffs operate twenty-one Planet K Gifts stores in retail zoning districts throughout Texas.  (Dkt. # 74 at 5.)  In September 2021, Plaintiffs bought 1511 N. Bell Boulevard in Cedar Park to open another Planet K location.  (Id.) Plaintiffs obtained water and wastewater services from the city-owned and operated water utility.  (Id. at 6.)  It is undisputed that Plaintiffs did not reapply for new certificates of occupancy for the commercial building and residential apartment after their purchase on the basis that their "use and character remained the same."  (Id.)  In November 2021, Plaintiffs opened their Planet K Cedar Park store and leased the apartment to a residential tenant.  (Id.)  The area included several other businesses in the same zone as Planet K.  (Id.)

Planet K Cedar Park sells various merchandise, including CBD-related devices and items.  (Id.)  On or about December 3, 2021, after a City code compliance officer visited the premises, Planet K Cedar Park was identified as a "head shop."  (Id. at 7.)  The City thereafter issued a Notice of Violation requiring Planet K Cedar Park to cease all operations by December 17, 2021, but Plaintiffs refused to comply.  (Id.)

Another Notice of Violation was sent on or about December 17, 2021, asserting a "head shop" violation and operating without a certificate or occupancy or sign permits.  Plaintiffs again refused to comply with the demand to cease operations.  (Id.)  The City subsequently filed criminal complaints against Plaintiffs Michael Kleinman ("Kleinman") and AusPro Enterprises LP ("AusPro"), asserting violations of multiple local ordinances.  (Id.)

On January 27, 2022, the City shut off water service to the main building and tenant-occupied apartment.  (Id. at 8.)  However, Plaintiffs still did not close Planet K Cedar Park and trucked in fresh water for Planet K and the apartment tenant.  (Id.)  In response, the City blocked the sewer line on February 5, 2022, which caused the toilets to back up.  (Id.)  Plaintiffs rented a porta potty after the sewage line was capped for the building and residential apartment.  (Id.)

To attempt to resolve the "head shop" dispute, Plaintiffs' counsel at the time communicated with City counsel.  (Id.)  On February 15, 2022, Plaintiffs' criminal defense counsel requested a meeting with the City Attorney to determine which retail items the City objected to.  (Id.)  The City Attorney refused the meeting and stated the ordinance definition regarding "head shops" was clear and did not wish to debate the matter.  (Id. at 9.)

Plaintiffs claim other stores sell similar hemp-related products in the area, including Higherluck Grocery, Pinnacle, Essentials, and Drip n Rip Vapes.

5

(<u>Id.</u>)  The code compliance officer is believed to have known this before issuing notices to Plaintiffs, yet the other businesses have allegedly yet to be targeted for closure.  (<u>Id.</u>).

On May 31, 2022, Plaintiffs filed the instant lawsuit in federal court seeking declaratory and injunctive relief.  (Dkt. # 1.)  On July 8, 2022, Plaintiffs filed a Motion for Preliminary Injunction.  (Dkt. # 20.)  On July 20, 2022, Magistrate Judge Howell recommended denying the motion for preliminary injunction.  (Dkt. # 27.)  On July 18, 2022, the City filed a Motion to Dismiss Plaintiff's First Amended Complaint.  (Dkt. # 23.)  On November 9, 2022, the Court entered its Order adopting the Report and Recommendation of Magistrate Judge Howell and denying the Motion to Dismiss and Request for Declaratory and Injunctive Relief.  (Dkt. # 39.)  On January 12, 2024, the Court granted Plaintiffs' motion for leave to file their Second Amended Complaint.  (Dkt. # 58.)  On June 14, 2023, Plaintiffs filed their Third Amended Complaint.  (Dkt. # 71.)

Meanwhile, Kleinman and AusPro were convicted of violating various ordinances by the City of Cedar Park Municipal Court throughout 2023 and early 2024.  (Dkts. ## 80-1; 80-2.)  Kleinman and AusPro pleaded no contest or not guilty to the charges, and the municipal court subsequently found them guilty.  On May 4, 2023, the City filed a civil action in the 395th District Court of Williamson

County, Texas, also seeking declaratory and injunctive relief, civil penalties of $1,000 per day of operation, and attorney's fees. (Dkt. # 74 at 10.)

On July 19, 2023, Plaintiffs Kleinman and AusPro filed Applications for Pretrial Writ of Habeas Corpus in the Williamson County Court of Law No. 5 regarding the municipal convictions. (Dkt. # 80-3; 80-4.) On December 18, 2023, the County Court at Law No. 5 issued its Findings of Fact and Conclusions of Law, denying those Plaintiffs of the requested relief. (Dkt. # 90-6.) On July 10, 2023, the Austin Third Court of Appeals affirmed the trial court's order denying the Plaintiffs' writ applications. (Dkt. # 84-1 at 2.)

On June 18, 2024, Plaintiffs filed their Corrected Motion for Partial Summary Judgment. (Dkt. # 74.) On August 16, 2024, Plaintiffs filed their Supplemental Motion for Summary Judgment on the remaining claims. (Dkt. # 94.) On the same day, the City filed its Cross-Motion for Summary Judgment. (Dkt. # 95.) These motions are ripe for consideration.

## APPLICABLE LAW

"Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Griggs v. Brewer, 841 F.3d 308, 311–12 (5th Cir. 2016); see also Fed. R. Civ. P. 56(a). Further, "summary judgment is appropriate when there is no genuine issue of material fact and only a question of law is presented." McDaniel v. Anheuser-

Busch, Inc., 987 F.2d 298, 301 (5th Cir. 1993).  In deciding a summary judgment

motion, the court draws all reasonable inferences in the light most favorable to the

nonmoving party.  Wease v. Ocwen Loan Servicing, LLC, 915 F.3d 987, 992 (5th

Cir. 2019).

On cross-motions for summary judgment, the court examines each

party's motion independently, viewing the evidence and inferences in the light

most favorable to the nonmoving party.  White Buffalo Ventures, LLC v. Univ. of

Tex. at Austin, 420 F.3d 366, 370 (5th Cir. 2005).  "Cross-motions for summary

judgment will not, in and of themselves, warrant the granting of summary

judgment unless one of the parties is entitled to judgment as a matter of law. . . ."

Joplin v. Bias, 631 F.2d 1235, 1237 (5th Cir. 1980).  Each party may move for

summary judgment using different legal theories that rely on different sets of

material facts.  Bricklayers, Masons & Plasterers Int'l Union of Am. v. Stuart

Plastering Co., 512 F.2d 1017, 1023 (5th Cir. 1975).  Nonetheless, cross-motions

for summary judgment may be probative of the absence of a factual dispute when

they reveal a basic agreement concerning what legal theories and material facts are

dispositive.  See id.

DISCUSSION

Plaintiffs first seek partial summary judgment on their claims

regarding whether the City of Cedar Park's ordinance banning "head shops" is

preempted by Texas general law to the extent that the ordinance applies to consumable legal hemp products and devices. (Dkt. # 74.) In their supplemental motion, Plaintiffs seek to invalidate Cedar Park's ordinance banning "head shops" as unconstitutionally vague and also seek summary judgment on their equal protection claims. (Dkt. # 94.) The City seeks summary judgment on all claims. (Dkt. # 95.)[1]

## I.    Fourteenth Amendment Claims

In their Supplemental Motion for Summary Judgment, Plaintiffs seek (1) to invalidate Cedar Park's ordinance banning "head shops" because the ordinance is unconstitutionally vague, both facially and as applied, as a matter of law; and (2) summary judgment on Plaintiffs' equal protection claims, which includes declaratory and injunctive relief. (Dkt. # 94 at 1.) The City also seeks summary judgment on these claims. (Dkt. # 95 at 17, 19.)

### A.    Unconstitutionally Vague Claim

Plaintiffs contend the Cedar Park Ordinance on "head shops" is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment. (Dkt. # 94 at 4.) "Objections to vagueness under the Due Process Clause rest on the lack of notice and hence may be overcome in any specific case

---

[1] For clarity, the Court first addresses Plaintiffs' federal constitutional claims in this Order before the pendent state-law preemption arguments included in Plaintiff's Corrected Motion for Partial Summary Judgment.

where reasonable persons would know that their conduct is at risk." United States v. Clark, 582 F.3d 607, 613 (5th Cir. 2009) (quoting Maynard v. Cartwright, 486 U.S. 356, 361 (1988)).

The facial validity of a statute is a question of law. Vill. of Hoffman Estates, Inc. v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494–95, (1982); Ctr. For Individual Freedom v. Carmouche, 449 F.3d 655, 662 (5th Cir. 2006). The first step in evaluating the law's validity is an overbreadth analysis, which determines whether the law reaches a "substantial amount of protected conduct." Clark, 582 F.3d at 612. If it is not overbroad, then the Court must examine the facial vagueness challenge and, if the enactment implicates no constitutionally protected conduct, the Court should uphold the challenge only if the enactment is impermissibly vague in all of its applications, including its application to the party bringing the vagueness challenge. Hoffman, 455 U.S. at 494–95; Clark, 582 F.3d at 613. A statute is vague if people of "common intelligence must necessarily guess at its meaning." Coates v. City of Cincinnati, 402 U.S. 611, 614 (1971). If a reasonable person would know his conduct was covered by the statute, then there has been no failure of notice to that individual. See Maynard, 486 U.S. at 361.

Plaintiffs argue the "commonly known to be used" language in the Cedar Park Ordinance is unconstitutionally vague as opposed to the language included in Texas law. See Tex. Health & Safety Code § 481.002 (17) (defining

10

illegal "drug paraphernalia" as items "used or intended for use" with controlled substances, including objects "used or intended for use" with controlled substances). (Dkt. # 94 at 3).  Moreover, Plaintiffs contend that because the "head shops" Ordinance does not require proof of a store owner's knowledge or intent with regard the intended uses of the objects in question, the ordinance is unconstitutionally vague.  (Id. at 5.)

The City argues that Plaintiffs' claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994).  (Dkts. ## 95 at 11; 105 at 2.)  Moreover, the City also contends Plaintiffs are collaterally estopped from raising their vagueness challenge because a state County Court at Law already rejected this argument. (Dkt. # 105 at 4–5.)  It is undisputed that Plaintiffs Kleinman and AusPro raised their vagueness challenge in the County Court at Law.  (Dkt. # 80-3; 80-4.)  The state court concluded that the City's "head shop" definition is not unconstitutionally vague on its face because it provides "objective standards for those charged with enforcing the law" and does not allow "for arbitrary and discriminatory enforcement.'"  (Dkt. # 80-6 at 16.)

i.    Heck v. Humphrey

The City first invokes the doctrine of Heck v. Humphrey to argue that Plaintiffs cannot show that their state convictions for violating multiple city ordinances have been reversed or invalid.  (Dkt. # 95 at 11–12.)  The City contends

that because Plaintiffs' allegations, if proved, would undermine the validity of the

municipal convictions, and the convictions have not been reversed or set aside,

Plaintiffs' § 1983 claims must be dismissed.

Plaintiffs respond that <u>Heck</u> does not apply because (1) there are no

underlying criminal convictions because the Williamson County Court at Law

prosecutions are *de novo* proceedings which annulled the municipal court

judgments, and (2) none of the municipal court proceedings involved MMK, such

that <u>Heck</u> cannot bar MMK's claims.  (Dkt. # 101 at 2.)

Pursuant to <u>Heck v. Humphrey</u>, to recover damages for an allegedly

unconstitutional conviction or imprisonment, a plaintiff must prove that the

conviction or sentence has been reversed or set aside.  512 U.S. at 486–87.  If a

judgment in a plaintiff's favor would necessarily imply the invalidity of a standing

conviction or sentence, the lawsuit is not cognizable under § 1983.  <u>Id.</u> at 487.  If a

plaintiff has failed to satisfy the <u>Heck</u> requirements, the Fifth Circuit directs lower

courts to dismiss the party's claims "with prejudice to their being asserted again

until the <u>Heck</u> conditions are met."  <u>DeLeon v. City of Corpus Christi</u>, 488 F.3d

649, 657 (5th Cir. 2007).

In <u>Wilson v. Midland Cnty., Texas</u>, 116 F.4th 384 (5th Cir. 2024), the

Fifth Circuit made clear that <u>Heck</u>'s favorable-termination requirement concerns

*all* § 1983 claims by *all* civil plaintiffs who seek civil remedies against defective

criminal processes.  Id. at 388.  The Fifth Circuit reasoned that the favorable-termination requirement is rooted in tort law principles that apply both inside and outside of prison—not habeas principles.  Id. at 396.  That is why favorable termination is an element of any and all § 1983 claims challenging tainted convictions, sentences, or prosecutions.  Id.

In Olivier v. City of Brandon, Mississippi, No. 22-60566, 2023 WL 5500223 (5th Cir. Aug. 25, 2023), the Fifth Circuit addressed whether Heck bars a claim for injunctive relief that disputes the constitutionality of a local ordinance.  Id. at *3.  There, the Fifth Circuit found that Olivier's plea of *nolo contendere* at the municipal level was a conviction that implicates Heck.  Id. at *4.  Even though Olivier was only seeking prospective relief, the Fifth Circuit recognized that Heck also serves as a bar to declaratory and injunctive relief.  Id.  The Court reasoned that its prior holding in Clarke v. Stalder, 154 F.3d 186 (5th Cir. 1998) makes clear that Heck forbids injunctive relief declaring a state law of conviction as "facially unconstitutional."  Olivier, 2023 WL 5500223 at *4; Clarke, 154 F.3d at 190.  Simply put, a "[c]onviction based on an unconstitutional rule is the sort of 'obvious defect' that, when established, results in nullification of the conviction."  Clarke, 154 F.3d at 190 (citations omitted).

Plaintiffs argue that Heck does not apply because Williamson County Court at Law prosecutions are *de novo* proceedings which annulled the municipal

court's judgments.  (Dkt. # 83 at 3.)  Thus, Plaintiffs argue "there has been no

criminal conviction."  (Id.)  Plaintiffs rely on Texas law, which "hold[s] that a

judgment is final for the purposes of issue and claim preclusion 'despite the taking

of an appeal *unless what is called an appeal actually consists of a trial de novo.*'"

Scurlock Oil Co. v. Smithwick, 724 S.W.2d 1, 6 (Tex.1986) (emphasis added).

However, the Court is not persuaded by this argument.  That a *de novo* review has

been initiated "does not mean that the mere filing of the appeal from the municipal

court judgment eradicates the conviction for all other purposes."  Lipscomb v.

Randall, 985 S.W.2d 601, 607 (Tex. App.—Fort Worth 1999, pet. dism'd).

"Obviously, while a municipal court conviction may be 'null and void' in the sense

that it has no legal or binding force on a subsequent county court trial *de novo*, the

conviction remains a historical event reflected in the public record that continues to

have legal significance in other contexts for other purposes after it is appealed."

Id. at 608.

Plaintiffs further argue that none of the municipal court proceedings

involved Defendant MMK, such that Heck cannot bar MMK's claims.  (Dkts.

## 101 at 10; 107 at 8.)  The Court disagrees.  MMK is not a third party in this

lawsuit, but rather is an affiliated entity that is owned by Kleinman

as a limited partner.  (See Dkt. # 71 at 4.)  MMK is also involved in the operation

of the Planet K premises, which are then leased by AusPro.  (Id.)  As the City

points out, MMK falls under the "privity" rule and is bound by the outcome under

Heck as to both entities.  (Dkt. # 106 at 1–2); see e.g., E.E.O.C. v. Jefferson Dental

Clinics, PA, 478 F.3d 690, 695 (5th Cir. 2007) ("Under Texas law, the touchstone

of the representation-of-interests inquiry is whether 'the parties share an identity of

interests in the basic legal right that is the subject of litigation.'"); see also Dadi v.

Hughes, 67 Fed.Appx. 242, 2003 WL 21108550 at *1 (5th Cir. Apr.22, 2003)

(claim that plaintiff was "innocent owner" of property subject to forfeiture

following criminal conviction was barred by Heck.)  A finding in favor of

Defendant MMK against the "head shop" Ordinance would have a direct

implication on Kleinman and AusPro's legal rights.  That is, all three parties share

an identity of interests in obtaining a judgment that the "head shops" Ordinance is

unconstitutional, which would in turn invalidate the underlying convictions.

Therefore, the Court finds that Heck bars Plaintiffs' due process

challenge to the constitutionality of the "head shop" Ordinance that led to

Plaintiffs' convictions at the municipal level.  A determination that the "head shop"

Ordinance is unconstitutionally vague would "necessarily imply" the invalidity of

the underlying convictions.  Clarke, 154 F.3d at190.  Because the Court finds

Plaintiffs' claim is barred by Heck, it need not address the alternative arguments

advanced by the City.

Accordingly, the Court **DENIES** Plaintiffs' Motion for Summary Judgment on the due process claims (Dkt. # 94 at 3) and **GRANTS** the City's Motion for Summary Judgment regarding these claims.  (Dkt. # 95 at 17.)  The denial shall be without prejudice so as to allow Plaintiffs an opportunity to pursue their claims if the convictions are later "reversed," "expunged," or "declared invalid."  See Heck, 512 U.S. at 487; see also DeLeon, 488 F.3d at 657.

B.    Selective Enforcement Claims

Plaintiffs next argue that the City is intentionally treating Plaintiffs differently from others similarly situated without a rational basis for doing so because it has not filed complaints against the countless other businesses in the Cedar Park area that sell similar items and has not terminated water and sewer services to other businesses based on violation of the Ordinance.  (Dkt. # 71 at 18.)

In Village of Willowbrook v. Olech, 528 U.S. 562 (2000), the Supreme Court recognized that an equal protection claim can be brought by a "'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Id. at 564.  Similarly, an equal protection plaintiff can prevail under a selective enforcement theory by showing "that the selective enforcement was deliberately based upon an unjustifiable standard such as race,

religion, or other arbitrary classification." <u>Allred's Produce v. U.S. Dep't of Agric.</u>,

178 F.3d 743, 748 (5th Cir. 1999) (quotation marks omitted).

   Plaintiffs argue the evidence shows that the City has singled out

Planet K Cedar Park for prosecution of the "head shop" Ordinance and that the

City holds animus, ill-will, and vindictiveness in the prosecution of Plaintiffs.

(Dkt. # 94 at 10.)  Plaintiffs contend the City demonstrated its ill-will with the

following conduct: (1) refused steadfastly to meet with Plaintiffs or provide clarity

what products the City claims cannot be sold under the ordinance; (2) refused any

penalty less than shutting down Planet K; (3) filed dozens of criminal complaints

designed to shut down Planet K on pretexts such as signage and lack of permits;

(4) used its ability to shut down Plaintiffs' water and sewer services, based on

asserted "head shop" violations, as the pretext for denying their certificate of

occupancy, which it then used as the pretext for over 250 criminal prosecutions for

operating without a certificate of occupancy and having no working bathroom or

water service; and (5) filed a state-court civil suit (after Plaintiffs filed this suit)

seeking permanent injunctive relief to shut down Planet K.  (<u>Id.</u> at 10–11.)

   The City responds that Plaintiffs claims are barred by <u>Heck</u>, and that

Plaintiffs are collaterally estopped from raising their selective prosecution claims

because Plaintiff raised the same arguments in the state court proceedings.  (Dkt.

# 105 at 4, 9.)  Moreover, the City provided evidence that it did in fact prosecute other entities. (Id. at 8.)

Plaintiffs argue that collateral estoppel does not apply here because there is no final judgment as the findings were made by a Williamson County Court at Law judge in a *pre-trial habeas corpus* proceeding involving Plaintiffs Kleinman and AusPro (not MMK).  (Dkt. # 107 at 6–7.)  However, Texas law recognizes that if an applicant files a pretrial application, and the trial court grants the application but denies the relief sought, the order is effectively a final judgment and is immediately appealable, even though the criminal prosecution has not yet advanced to trial.  Ex parte Matthews, 452 S.W.3d 8, 12 (Tex. App.—San Antonio 2014, no pet.).

Nonetheless, the Court finds the selective enforcement claims are also subject to Heck because a finding the City violated Plaintiffs' equal protection rights would "necessarily imply" the invalidity of Plaintiffs' underlying conviction. See Ngoc-Chi Huynh v. City of Houston, Tex., No. CIV.A. H-10-1303, 2011 WL 6250792, at *7 (S.D. Tex. Dec. 12, 2011) ("[T]o the extent that Plaintiffs challenge any conviction on any municipal ordinance citation as a violation of their right to equal protection, such claims are barred by Heck."); see also Williams v. Martinez, 74 Fed.Appx. 406, 2003 WL 22048208 at *1 (5th Cir. Sept.3, 2003) (applying Heck to claim for malicious or selective prosecution); Rogers v. Ill. Dep't of Corrs.,

Special Evaluation Unit, 160 F.Supp.2d 972, 977 (N.D. Ill. 2001) (holding that

Heck applies to selective prosecution claims under § 1983).

Accordingly, the Court **DENIES** Plaintiffs' Motion for Summary

Judgment on the selective enforcement equal protection claims (Dkt. # 94 at 10)

**WITHOUT PREJUDICE** and **GRANTS** the City's Motion for Summary

Judgment on the claims.  (Dkt. # 95 at 19.)

C.    Termination of Water and Sewer Services

In its motion for summary judgment, the City argues Plaintiffs cannot

show that the City violated their equal protection rights with respect to the water

termination claims.  (Dkt. # 95 at 21.)  The City contends it had a valid reason for

terminating water and wastewater service at the Planet K Cedar Park location in

that the services had been obtained fraudulently because Plaintiffs had not obtained

a certificate of occupancy nor had the requisite inspections for safety, fire and

compliance with building codes.  (Id.)  Moreover, the City contends the provision

of water and wastewater service is a governmental function for which the City

enjoys governmental immunity.  (Id. at 22.)

Plaintiffs respond that a rational basis test has no application here

because the City's decisions to withhold a certificate of occupancy and to deprive

Planet K Gifts of water and wastewater services were adjudicative, not legislative.

(Dkt. # 101 at 12.)  Instead, Plaintiffs contend that the Court must focus on what

actually motivated the City's conduct, not whether there was any conceivable
rational basis for it.  (Id.)  Plaintiffs claim the evidence shows that those acts were
motivated by the City's wish to enforce its allegedly unconstitutional "head shop"
Ordinance.  (Id.)

       The Court finds that whether the City's decision regarding the
occupancy certificate and termination of water services is legislative or
adjudicative, the Court will ultimately apply a rational basis standard or review.
See Vineyard Investments, L.L.C. v. The City Of Madison, Miss, 440 Fed. Appx.
310, 314 (5th Cir. 2011) ("Assuming without deciding that Vineyard had a property
interest in the building permit and that the City's building permit determination is
considered adjudicative for the purposes of the standard of review, the City's action
was rationally related to a legitimate government interest.  When reviewing an
adjudicative action, we look to the record to determine the actual motivation for
the conduct.")

       Here, the record is clear the City was concerned about multiple
violations of local ordinances identified at Planet K Cedar Park.  (See Dkt. # 74-4
at 4.)  The violations included the zoning violation for operating a head shop,
failure to obtain a certificate of occupancy, and unpermitted and/or unauthorized
signs on the property.  (Id.)  Thus, enforcing its local ordinances was the actual
motivation for the City's actions.  (Dkt. # 106-1 at 3.)

The evidence shows the City requires inspections and a certificate of occupancy prior to a business occupying a building.  (Dkt. # 95 at 20.)  The City contends this is a legitimate use of the City's police powers, and the City requires that at least a temporary certificate of occupancy must be applied for prior to connecting any City utilities.  (Id.)  Thus, Plaintiffs must negate every conceivable argument that might support the basis for the ordinance, thus demonstrating that the regulation is not rationally related to a legitimate government interest.  See Goldblatt v. Town of Hempstead, 369 U.S. 590, 596 (1962).

The Court finds Plaintiffs have failed to meet this burden.  The City asserts it had a valid reason to not issue a certificate of occupancy, and subsequently to terminate the water services, because Plaintiffs had not received the requisite inspections for safety, fire and compliance with building.  (Dkt. # 106 at 9.)  The Court finds that this is a legitimate government interest and that the City's actions were rationally related to achieving it.  See Draper v. City of Arlington, 629 S.W.3d 777, 786 (Tex. App.—Fort Worth 2021, pet. denied) ("If it is at least 'fairly debatable' that the ordinance was rationally related to a legitimate government objective, the ordinance must be upheld.").

Accordingly, the Court **GRANTS** the City's Motion for Summary Judgment on this issue (Dkt. # 95 at 19) and dismisses Plaintiff's claims regarding the termination of water and wastewater services.

II.    <u>Texas Law Preemption</u>

  Plaintiffs seek partial summary judgment on their claims regarding whether the City's Ordinance banning "head shops" is preempted by Texas Health & Safety Code § 443.003.  (Dkt. # 74 at 12.)  Under the Texas Constitution, home-rule cities, like the City of Cedar Park, "have broad discretionary powers" to enact their own ordinances, "provided that no ordinance 'shall contain any provision inconsistent with the Constitution of the State, or [with] the general laws enacted by the Legislature of this State.'"  <u>Dall. Merch.'s & Concessionaire's Ass'n v. City of Dall.</u>, 852 S.W.2d 489, 490 (Tex. 1993) (quoting TEX. CONST. art. XI, § 5).

  Home-rule cities "possess the full power of self-government and look to the Legislature not for grants of power, but only for limitations on their power." <u>Id.</u> at 490–91 (citing <u>MJR's Fare v. City of Dall.</u>, 792 S.W.2d 569, 573 (Tex.App.-Dallas 1990, writ denied)).  A home-rule city ordinance is unenforceable to the extent it conflicts with a state statute.  <u>Id.</u> at 491 (citing <u>City of Brookside Vill. v. Comeau</u>, 633 S.W.2d 790, 796 (Tex.1982)).  However, a state statute and a home-rule city ordinance "'will not be held repugnant to each other if any other reasonable construction leaving both in effect can be reached.'"  <u>Id.</u> (quoting <u>City of Beaumont v. Fall</u>, 116 Tex. 314, 291 S.W. 202, 206 (1927)).  Consequently, if the Texas legislature decides to preempt a subject normally within a home-rule city's broad powers, "'it must do so with unmistakable clarity.'"  <u>S. Crushed</u>

Concrete, LLC v. City of Hous., 398 S.W.3d 676, 678 (Tex. 2013) (quoting In re

Sanchez, 81 S.W.3d 794, 796 (Tex. 2002)).

Plaintiffs argue Texas general law preempts the City's "head shop"

Ordinance, and enforcement thereof, as Texas' laws concern hemp and consumable

hemp products. (Dkt. # 74 at 11.) Plaintiffs argue the legislative intent to preempt

local law surrounding hemp and corresponding hemp "devices" is clear. (Id.

at 12.) The preemption clause at issue states that a "municipality . . . may not

enact, adopt, or enforce a rule, ordinance, order, resolution, or other regulation that

prohibits the . . . sale of a consumable hemp product." Tex. Health & Safety Code

§ 443.003. Plaintiffs contend the preemption clause defines the subject matter—

"consumable hemp products"—to include the "devices" that are used to obtain the

health benefits or effects of hemp. Tex. Health & Safety Code §§ 443.001(a);

443.002. Accordingly, "consumable hemp product" expressly includes "devices,"

which is what the City's ordinance purports to ban. (Dkt. # 74 at 12.)

In response, the City offers alternative reasons why the Court should

not grant summary judgment to Plaintiffs on the preemption claim. (Dkt. # 80

at 5.) First, the City argues Plaintiffs' preemption claim is barred by Heck. (Id.)

Second, Plaintiffs' convictions are res judicata of Plaintiffs' preemption argument

as a judicial determination has already been made that the items Plaintiffs sell "are

commonly used, intended to be used, and commonly known to be used to inhale or

ingest marihuana." (Id. at 5–6.)  Third, even if the Texas Legislature intended to

preempt the field of hemp production and sales, Plaintiffs are not entitled to that

preemption, because Plaintiffs have not pled and cannot show that they have the

proper licenses to sell or process consumable hemp products, and the preemption

only applies to licensees.  (Id. at 6.)  Finally, the City argues Plaintiffs' claims are

barred by the Younger abstention doctrine.  (Id.)

       In its own motion for summary judgment, the City further argues it is

a home-rule city, and therefore, Plaintiffs have not, and cannot demonstrate that the

Texas Legislature expressly, with "unmistakable clarity" intended to preempt the

City's zoning ordinance regulating "head shops."  (Dkt. # 95 at 11.)  The City

makes the same arguments in its own motion for summary judgment as in its

response to Plaintiffs' partial motion for summary judgment.

       Plaintiffs respond that Heck does not apply to the preemption claim

because (1) this is a pendant state-law claim for redress of state constitutional

violations, (2) the preemption claim is not sounded in tort, and (3) Plaintiffs'

preemption claim would not render the underlying convictions invalid.  (Dkt. # 83

at 3–5.)

       The Court finds that Heck also bars Plaintiffs' preemption challenge

to the constitutionality of the "head shop" Ordinance that led to the convictions at

the municipal level.  The Fifth Circuit has not definitively ruled that Texas state-

law claims should be addressed apart from <u>Heck</u>.  <u>See</u> <u>Thomas v. Louisiana, Dep't of Soc. Servs.</u>, 406 F.App'x 890, 898 n. 4 (5th Cir. 2010); <u>DeLeon</u>, 488 F.3d at 652 n.3.  However, Plaintiffs prevailing on their state law preemption claim would necessarily undermine the validity of the underlying convictions based on the "head shop" Ordinance.  Because the Court finds Plaintiffs' preemption claim is barred by <u>Heck</u>, it need not address the alternative arguments advanced by the City.

Accordingly, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment on the preemption claim **WITHOUT PREJUDICE**. (Dkt. # 74.)

III.    <u>Objections</u>

In its reply in support of its motion for summary judgment, Defendant objects to Plaintiffs' Exhibits D-1-D-3 (Dkt. # 101-4) and photos (Dkt. # 101-7) as hearsay, lack of personal knowledge, prejudicial, confusing, and not relevant to the matters at issue in this litigation and should be stricken from the record.  (Dkt. # 106 at 10.)  At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form.  <u>See</u> Fed. R. Civ. P. 56(c); <u>Lee v. Offshore Logistical & Transp., LLC</u>, 859 F.3d 353, 355 (5th Cir. 2017).  Therefore, the Court overrules these objections.

CONCLUSION

For the reasons stated, the Court (1) **DENIES** Plaintiffs' Motion for Partial Summary Judgment (Dkt. # 74); (2) **DENIES** Plaintiffs' Supplemental Motion for Summary Judgment (Dkt. # 94); and (3) **GRANTS** Defendant's Motion for Summary Judgment.  (Dkt. # 95.)  Plaintiffs' federal and state law claims against the City are hereby **DISMISSED.**

Plaintiffs' due process, selective enforcement, and Texas law preemption claims shall be **DISMISSED WITHOUT PREJUDICE** to their claims being asserted again if the Heck conditions are subsequently met.

**IT IS SO ORDERED.**

**DATED:** Austin, Texas, March 3, 2025.

_____
David Alan Ezra
Senior United States District Judge

26